MEEHAN, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, October 31, 1905.

1. MASTER AND SERVANT: Safe Place to Work: Assumption of Risk. In the work of laying a railroad track, a railroad company is not required to keep the track at all points and at every moment in an absolutely safe condition, and certain risks are incident to construction of a railroad track which tracklayers are presumed to assume.

2. ———: ———: ———. Where a construction train was backed over a newly-laid track and caused a rail to spring upward and injure a workman engaged in attaching angle bars to it, in the absence of evidence that the foreman knew of the existence of a "high tie" under the rail, which caused it to spring up, the workman could not recover for the injuries received, because he assumed such risk as an incident to his employment.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED.

*L. F. Parker* and *J. G. Egan* for appellant.

(1) The defendant was not negligent in having the track in an incomplete condition, with half the full number of ties and the rails not permanently fastened to the ties, for the work was that of construction. Holloran v. Union Iron & Foundry Co., 133 Mo. 470; Railroad v. Henderson, 134 Ind. 636; Armour v. Hahn, 111 U. S. 313, 28 L. Ed. 440; Heald v. Wallace, 109 Tenn. 346. (2) The defendant was not negligent in backing the construction train down over the uncompleted track, according to the regular practice, and after a warning had been given, which the plaintiff heard. Greenwall v. Railroad, 49 Mich. 197, 200; Ring v. Railway, 112 Mo. 230; Loring v. Railway, 128 Mo. 349; Evans v. Railroad, 178 Mo. 508. (3) The defendant was not negligent in directing the plaintiff to fasten the angle-bars to the rails after the rails were laid on the ties, instead of doing the fastening while the rails were on the pioneer car. Harrington v. Railroad, 104 Mo. App. 663. (4) The plaintiff assumed all risks of doing the work in the manner in which it was being done at the time of the accident. Aerkfetz v. Humphreys, 145 U. S. 418; Railroad v. Jackson, 12 C. C. A. 507, 65 F. 48.

*James J. O'Donohoe* for respondent.

(1) The appellant was guilty of negligence in requiring the respondent to attach the angle-bars to the rails while on the ground in front of the train, and in causing the train to back up and thus failing to protect respondent while at work. Moore v. Railroad, 85 Mo. 588; Dayharsh v. Railroad, 103 Mo. 570; Spotts v. Rail-

road, 111 Mo. 380. The law presumes that respondent was in the exercise of ordinary care. Buesching v. The St. Louis Gaslight Co., 73 Mo. 219; Parsons v. Railroad, 94 Mo. 286. (2) It is well settled that "the fact that an employee is directed by his superior in charge to do an act at a time and under such circumstances that a person would reasonably apprehend danger would not justify his disobedience of such orders, and obedience is not negligence." Dowling v. Allen & Co., 74 Mo. 13; Stephens v. Railroad, 96 Mo. 207. (3) "It is only when the defect is glaring that with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, the servant assumes the risk." Conroy v. Vulcan Iron Works, 62 Mo. 35; Schroeder v. Railroad, 108 Mo. 322; Monahan v. The K. C. Clay & Coal Co., 58 Mo. App. 68. Usually, the question is one for the jury, and a nonsuit or demurrer to the evidence is not permissible. Thorpe v. Railroad, 89 Mo. 650; Hamilton v. Mining Co., 108 Mo. 364. Assumption of risk is a matter of defense; and to be available must be pleaded. Alcorn v. Railroad, 108 Mo. 81.

BLAND, P. J.—In January, 1904, defendant was engaged in laying a track on its roadbed near Afton, in St. Louis county, employing for the purpose from seventy-five to eighty men and a train consisting of a locomotive engine and five cars. Two of the cars were used to haul ties, two others were loaded with steel rails thirty-three feet in length, and the fifth was a pioneer car, on the sides of which were rollers. Over these rollers the rails were pushed from the adjoining car and thence carried to the track. On the back end of this car was a platform considerably lower than the body of the car. On January 5, 1904, plaintiff, then in the employ of the defendant, was directed by Read (the boss) to stand on the platform of the pioneer car and bolt angle-bars on the ends of the rails as they were shoved over the rollers from the adjacent car. After the angle-bars were bolted

on, ten other employees would take the rail from the pioneer car and carry it to its place and lay it on the ties on the track. On January ninth, plaintiff, from some cause, was unable to fasten the angle-bars on as fast as Reed wanted it done and was causing some delay, and Reed ordered plaintiff to go upon the ground and bolt on the bars. In obedience to the order plaintiff put some angle-bars on his shoulder, went upon the ground and put two on one rail without accident. But when he was proceeding to attach the bars to the second rail, plaintiff's evidence is, that he threw two bars down at the end of the rail, then stooped down and took hold of one of them to put it in place; that just as he was raising the bar from the ground the rail sprung up, came in contact with the index finger of his right hand, where he had a grip on the angle-bar, and cut it off. This suit is to recover for the loss of this finger.

The specific negligence alleged in the petition is that Reed, the foreman, negligently ordered the train to back over loose ties and unspiked rails; that as the train was backed it passed over the loose rails and ties and the weight and motion of the train caused a rail to ascend and strike plaintiff's hand. The evidence shows that the roadbed had been graded and leveled ready for laying the track. The track was laid with broken joints in the following manner: From nine to ten ties were laid and on these ties and fastened or attached to the abutting rail by the angle-bars, through which, and the rails, four bolts were passed and fastened. The rail was spiked down to the ties and then by order of Reed the train was slowly backed up about one-half the length of the rail (fifteen or sixteen feet) and stopped, and then another rail was laid on the other side of the track in the same manner and the train again backed up. This process of laying rails continued through the forenoon of each day. In the afternoon the track laid in the forenoon was gone over and the number of ties under each rail doubled and the rails spiked down to them. The defendant's evidence

is, and there is no countervailing evidence, that the angle-bars could be attached to the end of the rails as well by the operator standing on the ground as on the platform of the pioneer car, and that in dry weather it was customary for the operator to stand on the ground; that the work could be done faster on the ground for the reason two men could work at it if necessary when but one could work on the platform, and that after January ninth (the day plaintiff was injured) no angle-bars were attached on the platform of the pioneer car, but were all attached on the ground.

Plaintiff's witnesses testified that the rail which came in contact with plaintiff's finger was caused to spring up on account of a "high tie" laid fifteen or sixteen feet from the end of the rail, opposite the end that struck plaintiff's finger; that this "high tie" caused the rail to spring or fly up when the pioneer car was backed on it. The "high tie" was laid by plaintiff's co-employees and there is no evidence that Reed, the foreman, or any of the employees, noticed that it was "high" until the accident, and there is nothing in the evidence showing that there was anything about the "high tie" to attract attention.

Plaintiff's finger was amputated at the first joint, no complications set up and it healed in due time.

The jury assessed plaintiff's damages at one thousand dollars. Pending a motion for new trial, on the suggestion of the trial court, plaintiff remitted five hundred dollars of his recovery, and a judgment was rendered in his favor for five hundred dollars from which defendant appealed in the usual way.

1.   There is no substantial evidence that plaintiff was guilty of any negligence that contributed to his injury. The principal contention of defendant is that there is no substantial evidence that defendant was guilty of negligence, and for this reason its peremptory instruction offered at the close of the evidence should have been given. The mode of laying the track and the use

and operation of the train for that purpose, in the manner described, are not shown to be unusual or necessarily dangerous, nor was the injury caused by any mishap to the train itself. The proximate cause of the injury was, according to the evidence, a "high tie," placed fifteen or sixteen feet from the end of the rail, which caused the other end of the rail to spring up when the pioneer car was pushed upon it. There is no evidence that this particular rail was not spiked down in the usual way as were all the other rails in the process of laying the track, and it was fastened or attached to the abutting rail by angle-bars, therefore, if defendant was negligent, its negligence consists in having a "high tie" in its track. Whether this "high tie" was of more than regulation thickness or whether there was an elevation in the surface of the roadbed where it was laid that caused it to rise above the other ties does not appear from the evidence. As hereinbefore stated, all the ties were laid by plaintiff's co-employees under the direction and supervision of Reed, the foreman, none of whom seem to have noticed that the tie was "high" until the very time of the accident. The work being done was the constructing of the track, not the leveling up, ballasting or final adjusting of the track. In the work of laying a railroad track upon a new roadbed it is not expected, nor in fact is it practicable, to keep the track at all points and at every moment in an absolutely safe condition. A skeleton track must first be laid before the track can be ballasted, leveled up and made perfect and complete. Certain risks are ordinarily incident to the construction of a skeleton track which the track-layers understand and are presumed to assume. [Holloran v. Iron & Foundry Co., 133 Mo. l. c. 478, 35 S. W. 260; Burdict v. Railway, 123 Mo. l. c. 231, 27 S. W. 453; Morrison Mfg. Co. v. Roach & Green, 104 Mo. App. 633, 78 S. W. 644.]

A case somewhat similar to the one in hand is Evansville & Richmond R. R. Co. v. Henderson, 134 Ind.

636, where it was disclosed by the evidence that "at the time the appellee was injured, as alleged in his complaint, the appellant's road was in process of construction. It was constructed on what is known as the half-tie system. This is the usual mode of constructing railroads in Indiana. Under this system one-half the ties necessary to a completed road are laid down upon the grade and the rails put down upon them and spiked. The construction train is then run over the road in this condition for the purpose of distributing sufficient ties to complete the road. When the ties are all down, the road is then ballasted and completed. The appellee, knowing the incomplete condition of the appellant's road, took employment on the construction train, and on the morning of the second day of October, 1889, boarded such train and went from Bedford, in Lawrence county, to Indian Springs, in Martin county, a distance of eighteen or twenty miles, for the purpose of procuring ties. The train consisted of nine flat cars. At Indian Springs the seven cars nearest the engine were fully loaded, and the eighth contained about half the usual load of ties. The rear car being empty, the crew at work with the train, including the appellee, consisting of about twenty men, took passage upon the same on the return trip to Bedford. On such trip, and about one mile from Indian Springs, while the train was running at a speed of fifteen or twenty miles an hour, the car upon which the appellee was riding, as well as the car immediately in front of it, was derailed, by means of which the appellee suffered the injury for which he sues."

It was not shown what caused the derailment of the car. In holding that Henderson could not recover, the court, at page 639, said:

"It is an elementary principle of law governing the relation of master and servant, that when a servant enters upon an employment which is, from its nature, necessarily hazardous, the servant assumes the usual risks

and perils of the service, and this is especially true as to all those risks which require only the exercise of ordinary observation to make them apparent. In such cases, there is an implied contract on the part of the servant to take all the risks fairly incident to the service and to waive all right of action against the master for injuries resulting from such hazards."

Gulf, C. & S. F. Ry. Co. v. Jackson, 65 Fed. Rep. 48, is also in point, wherein the lamented Judge Thayer, writing the opinion of the court, said:

"Plaintiff, a section hand in the employ of defendant railway company, was engaged at night, with others, in tearing up and relaying a portion of the railway track which had been undermined by high water in a river near which it ran. While plaintiff and others were carrying a heavy rail, a part of the river bank near by caved in, which caused them to move forward hurriedly, when one of the men stumbled and fell. The others dropped the rail, which fell across a tie, causing one end to fly up and strike the injured plaintiff. Plaintiff claimed that defendant was negligent in not providing sufficient light, and in allowing the ground to be encumbered with the obstruction over which his fellow-workmen stumbled. Held, that, under the circumstances of the work to be done, defendant was not bound to supply a place free from obstructions, to do the work, and that plaintiff assumed the risks attendant upon the obstructed condition of the ground, as well as upon any deficiency of light, which must have been at least as well known to plaintiff as to defendant."

In Armour v. Hahn, 111 U. S. 313, it was ruled as follows:

"Carpenters, under charge of a foreman, and bricklayers, all employed by the owner through his superintendent, were engaged in the erection of a building, with a cornice supported by sticks of timber passing through the wall (which was thirteen inches thick) and projecting sixteen inches, and to be bricked up at the sides

and ultimately over the top of the timbers. When the wall had been bricked up on a level with, but not yet over, the timbers, the foreman of the carpenters directed two of them to take a joist for the edge of the cornice, and to push it out to the ends of the projecting timbers. In so arranging the joist, a carpenter stepped on the projecting part of one of the timbers, which tipped over, whereby he fell and was hurt. Held, that the owner of the building was not liable to him for the injury."

In Heald v. Wallace et al., 109 Tenn. 346, 71 S. W. 80, it was held:

"An experienced miner, continuing to work under an overhanging rock, with knowledge of the condition of the roof, and further undermining the rock, instead of suspending work and calling in the mine boss to place supports under it, as the rules of the employer required, assumed the risk.

"The rule as to the duty of the master to provide the employee a safe place to work did not apply to an entry room of a mine, which was constantly being changed by the labor performed."

The duty of a master to furnish a servant with a reasonably safe place to work only applies with all its rigor where the place and its conditions have some permanency and is unshifting. It does not apply where the place is constantly undergoing a change by the very work the servant is engaged in performing, nor where the work requires a repeated and continuous change of the servant's place to work, as in the work of attaching angle-bars to steel rails on a railroad track under construction. When the rule does not apply, the duty of the master to the servant is fully discharged if he does not place the servant in a discovered position of peril, or in one that might have been discovered by the exercise of ordinary care, which peril is not incident to the business or its duties. The master is not bound to use care to protect the servant from a danger incident to the work or to remove every obstruction that might be

in his way or endanger his person. He is only bound to use such care as is necessary to protect the servant from dangers that are not incident to the work. It cannot be said, on the evidence, that the plaintiff was sent to an extra hazardous place for the purpose of attaching angle-bars or that the springing up of the rail was not an incident due to the construction of the track. If this be true, then the peril was assumed by the plaintiff when he hired himself to the defendant to labor on the construction of the track and under all the authorities he cannot recover. But the plaintiff says: That the plaintiff assumed the risk incident to his employment is not pleaded in the answer, and for this omission the defense is not available, and cites Alcorn v. Railroad, 108 Mo. 81, as authority for this contention. No question of pleading is discussed in either of the three separate opinions by as many judges in the Alcorn case. It is said, in the majority opinion, at page 97, "that a servant assumes all risks incident to the business in which he engages and the duties he engages to perform," citing Jackson v. Railroad, 104 Mo. 448, and many other cases of like import from this and other States in support. We are unable to discern any fact or facts proven by the evidence that show that defendant was negligent in the discharge of any duty it owed the plaintiff. The accident that caused the injury seems to us to have been a mere incident of the work in which plaintiff was engaged; if so, then he assumed the risk of its happening when he hired himself to defendant to work on the construction of its track. We think, therefore, defendant's peremptory instruction should have been given, and reverse the judgment. All concur.