GEORGE WOLTERS, Administrator of the Estate of Harry Thobe, Deceased, Appellee, v. THE SUMMERFIELD CO., Appellant.

Master and servant: NEGLIGENCE: INSTRUCTIONS: EVIDENCE. It is
1  only the duty of an employer to use ordinary and reasonable care in selecting the necessary means to protect his servants against the negligence of other employees; he is not charged with an absolute duty in this respect. In the instant case the evidence is held insufficient to sustain the charge that the president of the defendant company, who knew that deceased was in the elevator shaft, negligently failed to use ordinary care to protect him from injury by the operation of the elevator by another employee.

Same. Where an employer had provided a proper number of com-
2  petent men to operate a passenger elevator, and the shaft of the elevator became dangerous to an employee by reason of the fact that he went below the elevator to investigate the cause of an apparent fire, the employer had the right to assume that the men in charge of the elevator would exercise care for the safety of such employee until otherwise advised, although he heard an order from someone to move the position of the elevator, which resulted in injury to the employee.

**Same.** Where a corporation has provided competent help and super-
intendency of a particular work, an officer of the corporation,
unfamiliar with the work, is not justified in assuming control until,
in the exercise of reasonable care, he should have discovered that
an employee was negligently performing his duty and that injury
was likely to result to another therefrom; especially where the
injured party had equal information regarding his danger and
equal opportunity for avoiding injury.

**Same: SAFE PLACE TO WORK.** The duty to furnish a safe place to work
does not apply to temporary perils arising in the course of the em-
ployment.

*Appeal from Scott District Court.*—HON. WM. THEOPHILUS,
Judge.

TUESDAY, MARCH 18, 1913.

ACTION to recover damages for injuries received by
Harry Thobe by a weight used on an elevator in defendant's
building, resulting in the death of Thobe. The defendant
denied all negligence on its part and pleaded that the negli-
gence, if any, was that of a fellow servant of Thobe. On the
issues joined the case was tried to a jury, resulting in a verdict
and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Cook & Balluff*, for appellant.

*J. C. Hall* and *Lane & Waterman*, for appellee.

DEEMER, J.—The defendant is a corporation, doing busi-
ness in the city of Davenport. It owns, occupies, and operates
in the conduct of its mercantile business a large building, four
stories in height, with a basement. In this building is an
elevator, running from the basement to the top floor. Harry
Thobe, a young man twenty-six years of age, who had done
some work about an elevator, was employed by the defendant
company, something like two months before the accident, as
a shipping clerk and a sort of general manager of the other

employees.   As he was the only one in defendant's employ who knew about elevators, the people who installed it gave him instructions about it, and he did the oiling, and looked after the machinery thereof.   He had a sort of superintendence thereof by reason of his familiarity with such appliances. Mark Silber was president of the defendant company, but he had no experience with elevators, and was not familiar with the mechanism thereof.   On the day of the accident smoke or steam was noticed coming from under a slide or gangway at one side of the bottom of the elevator shaft, and Thobe and two or three other employees undertook an investigation as to the cause thereof.   The men were then on the first floor of the building, and after sending word to the office, Thobe, Meyer, and one Bischoff went down in the elevator to extinguish the flames.   With the elevator down in the well, it was so dark that the men could not see, and some one suggested that the elevator be moved to an upper floor.   The regular elevator boy was off duty, and Bischoff, who operated the same during the absence of the regular man, volunteered to take it to an upper floor.   There is just a little conflict in the testimony as to what was said, but Bischoff ran the elevator to the first floor, and a jury was justified in finding that one of the employees told him not to come down with the elevator.   Bischoff said that he knew he might hurt some one if he ran the elevator down, but did not realize there was any danger in running it up.   After the elevator had been run up to the first floor, Thobe went down into the elevator pit, and it appearing that the smoke was coming from behind the uprights, which formed the slides for the counterweights of the elevator, he crawled in between them to investigate more closely, and while in that position Bischoff, who knew that Thobe was in the pit, but did not realize the danger of his position, without warning, in order to carry an employee, ran the elevator to the fourth floor, causing the counterweights to come down between the uprights and to strike Thobe with such force as to cause his death.

Recognizing that the act of Bischoff was that of a fellow servant, for which defendant was not responsible, plaintiff, who is the administrator of Thobe's estate, alleged that Silber, the president of the defendant company was negligent, in that he knew Thobe was in the elevator shaft; and that he failed to use ordinary care to avoid injuring him, although having knowledge of his dangerous position. The exact proposition here is that Silber, the president of the company, was present when some one gave the order to Bischoff to take the elevator to the first floor, and was negligent, in that he failed to stop the elevator after Bischoff had started to go to the fourth floor, or in failing to direct some of the men to stop it.

There is considerable conflict in the testimony as to whether or not Silber was present at the time the elevator was moved to the first floor, or when it was run to the fourth floor. But the jury was authorized to find that Silber was present when the men went to the basement to investigate the cause of the smoke; was there when some one suggested that the elevator be moved and was present when the elevator was moved to the fourth floor; although all concede that he gave no orders whatever in the premises, and that he had nothing to do with the handling of the elevator.

As already stated, after the men took the elevator to the basement, it was found that they could not see where the smoke emanated from, and some one of the group, other than Silber, suggested that the elevator be taken to the first floor, in order to have a better opportunity to see where the smoke came from. Bischoff undertook to do this, and did so. According to Bischoff:

They told me to take the elevator up. They didn't tell me how far up to take it; and they told me not to move it after I had stopped it. I am not sure who that instruction came from. The first thing I knew of an accident was that I felt a bump on the elevator. I knew something was wrong; I didn't know what it was. I heard an outcry after the bump. Then I reversed the elevator and brought it back down a few

feet and stopped. I stopped and spoke to them down below about what was wrong, and I couldn't find out, and I climbed out of the elevator and closed the gate and went down. I went downstairs from the top floor. Mr. Silber was there when I got back down to the basement. I don't know what he was doing. I know he was there at the time. After I ran the elevator up to the first floor, I kept it stationary for a few minutes. I couldn't say how long. I stood there as much as two or three minutes. Q. Did you talk to any of them down there about moving the elevator after you got up to the second floor? A. I don't remember if I said anything at all to them after I was on the first floor. Q. Did anybody down below say anything to you about moving the elevator after you ran it to the first floor and stopped it? A. Yes; they called up not to move the elevator. I took the finisher up to the top floor in the elevator, never thinking about the weights.

Another witness testified as follows regarding the directions to Bischoff:

I didn't see Bischoff take the elevator up at all. All I know, after he went up the shaft, that we called him Charley, and that is how I know he was in there; and his reply came down the shaft, and told me who he was. I called to him. I told him not to come down with the elevator. I knew his voice. I told him not to come down with the elevator. It was given by us that were in the pit. It was the direction that was given to Bischoff, and the only direction was that he was not to let the elevator come down. I suppose that was because somebody was going into the pit under it. Carl Meyer, Harry Thobe, and myself said, 'don't let the elevator come down.' That was an order or direction to the man in the elevator. I didn't hear any other order or direction given to the man in the elevator.

This is the testimony upon which plaintiff relies as showing negligence upon the part of Silber, the president of the company. It is said that the order given to Bischoff in his presence was a negligent one, in that he was told not to come down with the elevator, instead of being told not to move it at all; and that Silber should have corrected the order, or

taken some other precaution to save Thobe, whom he knew to be in a dangerous position, and that Silber was also negligent in not stopping the elevator, or ordering it stopped, when he was advised that it was being run up to the fourth floor.

The theory on which the case was submitted may be gathered from the following instructions:

(10) When a servant is set to work in a place, safe in itself, but in which he is exposed to danger from the work of other servants, not connected with his own, the master is bound to employ the necessary means to protect him against the acts of such other servants, and cannot delegate such duty to any other person, so as to relieve himself from liability in case of injury to the servant so set to such dangerous work.

(11) If you find that the president of the defendant company was present when Thobe went into the elevator pit to look for the source of the smoke or vapor, and knew, or in the exercise of ordinary care should have known, of Thobe's dangerous position in said pit, then it was his duty to exercise ordinary care to afford Thobe adequate protection. Did he, under all the facts and circumstances, exercise ordinary care to provide Thobe with a safe place to work in said elevator shaft, or to keep said shaft safe for work while Thobe was at work therein? Could he have had said elevator locked, so that it could not have been moved? Could he have put some person in the basement in charge of the cable controlling the movement of the elevator? Were any of these things reasonably necessary to be done in the exercise of ordinary care? This is for you to say in the light of the evidence, bearing in mind that ordinary care is such care as a reasonably prudent or cautious person would exercise under like or similar circumstances. It is for you to determine whether the defendant exercised ordinary care, or not, in view of all the facts and circumstances as shown by the evidence in the case.

In this same connection, the trial court also instructed as follows:

(13) The defendant cannot be held liable for any injury to Thobe caused by the negligence of a coemployée; and if you

find that Thobe was injured by reason of the negligence or want of ordinary care on the part of Charles Bischoff your verdict must be for the defendant, unless some negligence on the part of Mark Silber, as president of defendant company, combined with the negligence of Bischoff, was the cause of the injury. And if you find that the injury was due to the negligence of both Silber (said president) and Bischoff, then the defendant is liable and responsible for the injury, provided Thobe was himself free from negligence contributing to his injury and death.

Complaint is made of the tenth instruction, and it is also contended that there is no such showing of negligence as justified the trial court in submitting the matter to the jury. We are constrained to hold that the tenth instruction is erroneous, in that it held the defendant to an absolute duty of employing the necessary means to protect its employees from the negligence of other servants, instead of imposing upon the defendant the use of ordinary and reasonable care to that end; and we are also of opinion that there was not sufficient evidence of negligence on the part of Silber to take the case to a jury. The elevator itself was in a reasonably safe condition. It was properly constructed and reasonably well guarded, and the accident was not due to any defects therein. The accident was due to the negligence of Bischoff, the man who undertook, with defendant's knowledge, or at his direction, to move the same, and Bischoff was a fellow servant with Thobe in the doing of the work about which they were both engaged. True the jury was warranted in finding that defendant's president was present when some one directed the moving of the elevator to the first floor, in order that the source of the smoke might be discovered; but there is no testimony that Silber knew of the dangerous position assumed by Thobe. There is no testimony that the company had not a sufficient number of employees, or that they or any of them were incompetent for the work about which they were engaged.

1. MASTER AND SERVANT: negligence: instructions: evidence.

True the jury may have found that Silber heard the order given to Bischoff about taking the elevator to the first floor; but the nature of that order is by no means clear, for witnesses disagree as to the nature thereof. But, whatever it may have been, Thobe was as well advised as to the nature thereof as was Silber, and he (Thobe) was better informed as to the dangers incident to the work about which the men were immediately engaged than was Silber. With the order in mind, Thobe placed himself in a position of danger, and if Silber had any reason to believe that the elevator might be moved so as to endanger Thobe he (Thobe) was as well advised as was Silber, and the same circumstances which would show negligence on defendant's part would convict Thobe of contributory negligence.

. The testimony shows that Silber was not familiar with the mechanism of the elevator, while Thobe was, and the latter knew of the dangers incident to its use and operation; 2. SAME: and, assuming that the order to Bischoff as to the management of the elevator was negligent, Thobe was quite as familiar with that fact as was Silber. The defendant had furnished a proper number of competent men to run and manage the elevator, and the place became dangerous by reason of a temporary and unlooked for hazard; and Silber had the right to believe, until advised to the contrary, that the men who had been employed to manage and control the elevator would be mindful of the safety of others engaged about the work. The most that can be claimed from the testimony is that Silber heard an order given to Bischoff to take the elevator to the first floor and not to let it come down. Thobe heard the same order, if he did not give it, and, as we have said, if it was an inadequate order Thobe knew this as well as Silber; and knowing the fact Thobe placed himself in a hazardous position, and as a result thereof received the injuries which resulted in his death.

Silber, as president, we may assume, stood for the company, and when present was bound to exercise ordinary and

reasonable care for the protection of the employees of the company. But he was not required to undertake superintendence of the work; having supplied such superintendence, he was not justified in assuming that function himself, and was bound to act, if at all, when he saw, or in the exercise of reasonable care should have seen, that an employee was negligently performing his duties in such a manner ,as to jeopardize the life or health of an coemployee; and it must also appear that the injured employee was injured because of that negligence, and was free from any negligence on his part, contributing to the injury.

3. SAME.

As the defendant had a sufficient number of competent men to do the work, its president had the right to assume, until he knew to the contrary, that the work was being properly done; and until he knew, or should, in the exercise of ordinary care, have known, to the contrary he was not justified in interfering with the men in their work. Without competency himself, he might, by interfering with the men, place them in greater jeopardy than by leaving them alone. We concede, of course, that one directly representing a corporation may, by his negligent conduct, charge the corporation; but when the act charged is one of omission rather than of commission, and the work itself is in charge of competent employees, it requires rather a strong showing of neglect or inattention to hold the corporation liable.

The one prominent fact in the case is that Thobe had as much information regarding the character of the order given to Bischoff as did Silber, the defendant's president, and Thobe was better advised as to the hazards incident thereto than was Silber; yet, notwithstanding these facts, he placed himself in a position of imminent danger, and as a result received the injuries which resulted in his death. There is no showing that Silber was negligent in not attempting to stop the elevator as it was being taken to the fourth floor. He had a right to assume that the men in the pit with Thobe would do this, if it were deemed necessary; and when he discovered that

this was not being done it was too late to arrest the catastrophe.

The case is peculiar in its facts, and we are not cited to one like it; nor have we been able to find one in the books. Being *sui generis,* we have attempted to apply familiar principles to the facts disclosed, with the results

4. SAME: safe place to work. indicated. Failure to furnish a safe place to work is not involved, for the reason that the hazard was a transient one, growing out of the negligence of a fellow servant, and the place became temporarily hazardous because of the manner in which the work was done. Defendant was not negligent in failing to furnish a sufficient number of competent men, or in outlining an improper plan. The only fault of which plaintiff complains is that an improper order was given in the presence of defendant's president, and it is contended that he should have interfered, in some manner, to save the men from harm. That the duty to furnish a safe place to work does not apply to temporary perils arising in the course of employment is well settled. *Lammey v. Coal Co.,* 144 Iowa, 640; *Galloway v. Impr. Co.,* 148 Iowa, 93; *McQueeny v. Railroad Co.,* 120 Iowa, 524; *Oleson v. Coal Co.,* 115 Iowa, 74; *Meehan v. Manufacturing Co.,* 172 Mass. 375 (52 N. E. 518).

Having furnished a sufficient number of competent employees, the master is not liable, even though a vice principal in the person of a president of a corporation be present, unless it appears that this president, as an ordinarily careful and prudent man, knows that an order has been given which will likely jeopardize the life or health of an employee, who does not himself know of the hazard to which he is being subjected. And a president, who is not a superintendent, and who has no active charge of the work, has the right to assume, when the work is in charge of competent men, that no order will be given which will endanger the lives of coemployees. In other words, having a competent man in charge, he may assume that this man knows more about the details of the

work than he does; and he is not justified in interfering, save where it appears to his comprehension, as a reasonable man, that the orders given in his presence are likely to injure some of the employees. If his act were one of commission rather than omission, the case would be stronger than it is. Here he is not charged with any specific act, and the presumption in the first instance is that the order which he heard was proper. The men who were present differ among themselves as to the nature of the order given to Bischoff; and in view of this difference, and of the further fact that Thobe knew, quite as well as the president, of the nature of the order, whatever it may have been, we are constrained to hold there is no liability on the part of the company.

Again, Bischoff testified that the order which he heard directed him not to move the elevator, after he had stopped it. If that was the order, then there was no negligence on the part of Silber. In so far as Bischoff's conduct is concerned, that was the order as he so understood it. Yet, notwithstanding, he disobeyed it, and by reason of his negligence and disobedience of the instructions caused the injury. In other words, the accident was not caused by the failure of Silber to object to an improper order; for the order, as received by the employee, was not an improper or negligent one. At any rate, it is apparent that failure to correct an improper order was not the proximate cause of the injury.

It is one of those unfortunate accidents which sometimes happen, due to the carelessness and negligence of a co-employee, for which the master is not responsible. The trial court should have sustained defendant's motion for a new trial and set aside the verdict.

The judgment must be, and it is, *Reversed*.