M. E. Gillioz, Inc., *v.* Lancaster.

4-4958

Opinion delivered February 21, 1938.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.
*McDaniel, McCray & Crow,* for appellee.

Donham, J. Appellee, H. M. Lancaster, brought suit in the Saline circuit court alleging that he was injured while employed by the appellant, M. E. Gillioz, Inc., as the result of appellant's negligence, in that the appellant failed to use ordinary care to furnish him a reasonably safe place in which to work. At the time appellee received his injury he was engaged in dragging logs and piling them on the site of the reservoir of the Little Rock waterworks project on the Alum Fork of Saline River in the north part of Saline county, using his own team of mules for that purpose. The specific negligence alleged is as follows: "Said injury was received by reason of defendant's negligence in failing and refusing to provide

plaintiff with a reasonably safe place in which to work, by allowing snags and limbs to remain on the logs which he was required to skid, and by allowing brush and rubbish to accumulate on the ground and cover the stumps where plaintiff was required to work."

It was shown in evidence that on March 25, 1937, while engaged in dragging and piling logs at the site of said waterworks project, appellee hitched his team to a log that had a limb on it fifteen to eighteen inches in length. While dragging the log, it struck a stump, the limb coming in contact with the stump in such manner as to cause the end of the log to be thrown around and hit appellee, breaking one of the bones of his leg. It will be noted that appellee alleged in his complaint that brush had been allowed to accumulate on the ground and cover stumps where he was engaged in the work of dragging and piling said logs. In describing the manner in which he received his injuries, appellee testified: "On the 25th day of March of this year I was skidding logs with my own team. I was hired for this work by the defendant. I hitched to a log that had a limb on it about fifteen inches long, and there was a stump out in front of the log with some brush over it so that I couldn't see the stump, and when this limb on the log hit this stump the other end of the log flew around and hit me on the leg and knocked me down and broke this little bone in my leg. I could not see the stump for the brush that covered it. When this snag hit the stump it threw the other end of the log around."

Appellee further testified: "I was employed on the team crew that was helping on the clearing job for the Little Rock water project. My job was to skid out logs among those stumps. Where I could find a place ten or twelve feet away from a stump I would skid the logs and bunch them together like you were going to load them on a truck."

He further testified: "I have been a farmer most of my life and hauled logs between those times when I would not have any work to do at home, when I was not gathering or making a crop. Farming and logging have

been my work. There were a number of stumps around the scene where I was working. I was working by myself and I was free to choose any route that I wanted to travel in clearing these logs. I worked my own team.''

He further testified: ''Brush was not scattered in small bunches but was picked up and piled in heaps but this particular brush was some that they just failed to pick up and I did not see the stump. The stump was six or eight inches high. The log was some twelve to fourteen inches in diameter and twelve feet in length. Those stumps that were not to be pulled out were about six to eight inches high. This area where I had been working had been pretty heavily wooded and the practice was to leave small stumps as they were.''

Other witnesses testified that Lancaster was first put to clearing the site for the reservoir; then he was put to work with his team logging, as he was supposed to be a good logger. One witness, H. J. Doty, testified: ''Mr. Lancaster's duty with reference to handling these logs was to bunch them together—he said he had done lots of that work. He informed me that he had, and I told him to go ahead and do it in his own way. To pick out his own place to work and to do it in his own way and take his own time. After he had assembled a number of these logs in a central spot selected by him the piling crew would come behind and pile them up so they would burn. The smaller logs and the rotten logs were the ones that were to be burned. The brush was piled and after that it was burned.''

The last-named witness was the superintendent of the appellant corporation.

The jury returned a small verdict for the plaintiff, appellee here, same being for the sum of only $500. If the appellant is liable for appellee's injuries, this is a small sum to compensate therefor.

The question to be decided by this court is whether the trial court should have directed a verdict for appellant. At the close of the testimony on the part of appellee, appellant moved the court to direct the jury to return a verdict in its favor. This request was refused

and exceptions were saved. At the close of the evidence in the whole case, appellant asked the court to give its requested instruction No. 1, which instruction was as follows: "You are instructed to return a verdict for the defendant, M. E. Gillioz, Inc." This request was refused, to which refusal of the court appellant saved exception.

Appellee sought to recover, as stated, on the ground that appellant had failed to use ordinary care to furnish him a reasonably safe place in which to work. It is alleged that the place was made unsafe by reason of the fact that a limb fifteen to eighteen inches in length had been left on one of the logs which appellee attempted to drag and pile and that brush had been left unpiled, or had been permitted to accumulate on the ground, so as to obscure the presence of a stump against which the log was dragged, the limb which had been left on the log striking the stump in such manner as to cause the log to be thrown around and strike appellee on the leg, resulting in his injury as shown in evidence.

In determining whether the court committed error in refusing to direct a verdict for appellant, it is proper to consider two questions.

(1) Was there a duty on the part of appellant to use care to furnish appellee a reasonably safe place in which to work?

(2) Did appellee assume the risk of his employment so as to preclude recovery for the injury received?

In the case of *Cybur Lumber Co.* v. *Erkhart,* 118 Miss. 401, 79 So. 235, Erkhart, an employee of said lumber company, was injured while engaged as a tong man operating a skidder in an open forest. In the skidding operations, a cable being used had come in contact with a small tree, causing it to break about ten feet above the ground. The top of the tree thereupon fell over on the ground and the trunk still rested upon the stump. Later, on the same day, in taking down the skidder to move it to another place, the trunk of the tree slipped off its stump and fell on Erkhart and broke his leg. In passing on the merits of the case, the Supreme Court of Mississippi said: "But on the merits plaintiff's case must fail, and the judgment appealed from must be reversed. The sole

ground of negligence complained of is the alleged failure of the defendant company to furnish plaintiff with a reasonably safe place in which to work. There is no question but that this duty of the master to furnish employees a reasonably safe place to work is a continuing, non-delegable duty, frequently recognized and enforced by our courts. But this doctrine cannot be invoked as a basis of alleged negligence in the present case. We are not confronted with a case where the employee is assigned to work in any kind of building or structure, or at machinery that is at all stationary. The. controlling duties of the plaintiff here placed him in the open pine forests of South Mississippi, where general lumbering is being done, and his duties as a tong man carried him from log to log, and place to place, over a wide area. The very work of 'snaking' and bunching sawlogs in the forest by the use of a skidder was inherently dangerous. . . . The breaking of the bay tree by the steel cable several hours previous to the accident resulting in injury to plaintiff was a very natural occurrence and incident to the character of work being done by the crew. . . . The danger to the servant in this case is manifestly a transitory peril which the master could not foresee or provide against.''

In this case, the court further said: ''If a large sawmill corporation had devolved· upon it the duty of following its servants into the forest and securing each of · them against injuries from falling trees, limbs, or other accidents in the woods, then in .all logging operations .the master would become an absolute insurer of the safety of such employees. Their very work carries them from place to place as they fell, gather, and haul logs, and the hazard of an employee in any particular spot or place is necessarily temporary and transitory. Surely the master is not required to make safe the broad acres of woods and see to it that employees of the lumber company are not hurt by defective, broken, or falling trees.''

In this case, the court further said: ''There is a vital distinction between those cases in which the place itself is constantly shifting or· changing and those cases in. which the position of the. servant is stationary.''

As stated by Mr. Labatt: "The rule that it is the duty of a master to exercise ordinary care to provide a reasonably safe place of work for his servants is held not to be applicable to cases in which the very work at which the servants are employed is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds are regarded as being the ordinary dangers of the employment, and by his acceptance of the employment the servant necessarily assumes them." Volume 3, (2d Ed.) par. 1177.

And in 18 R. C. L., p. 595, par. 96, it is said: "An exception to the rule requiring the employer to make safe the place where his employees are at work is said to exist where the conditions of the place are constantly changing as the work progresses."

In the casenote to *Citrone* v. *O'Rourke Engineering Construction Co.*, 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340, it is said: "The decisions upon this subject are harmonious, and of late this exception has been interposed quite frequently against the servant's demand for damages. The reason for relaxing the rule in such cases is that it is more than the master can do to keep a changing working place safe from transient, shifting hazards which spring up only as the work advances. The servant is supposed to know this. He therefore assumes the risk when he goes to work. It is sometimes said in these cases that the servant has a better chance to become aware of the fleeting dangers that threaten him than the master, and that the servant therefore assumes the risk of injury therefrom."

In *Wolters* v. *Summerfield Co.*, 160 Iowa 127, 140 N. W. 388, the court held: "The duty to furnish a safe place to work does not apply to temporary perils arising in the course of employment."

In *Jakopac* v. *Newport Min. Co.*, 153 Wis. 176, 140 N. W. 1060, it is held: "The rule that an employer must furnish the employee a safe place to work does not apply . . . . where the working place is constantly changing, and the employee is assisting in making the changes."

694

In *Meehan* v. *St. Louis, etc., R. R. Co.,* 114 Mo. App. 396, 90 S. W. 102, the court said: "The rule requiring a master to furnish a servant with a reasonably safe place to work does not apply in the case of a servant employed to assist in laying a railroad track, since the place is constantly undergoing a change in character by the very work which the servant is performing, and the work requires a continuous change of place."

To the same point is the case of *Zeigenmeyer* v. *Charles Goetz Lime & Cement Co.,* 113 Mo. App. 330, 88 S. W. 139, where the syllabus reads: "A master is only required to exercise reasonable care to provide as safe a place for the performance of the services by a servant as the character of the work to be done will permit, and is not bound to furnish a safe place, where the danger is temporary or arises from the hazard and progress of the work itself."

In *Utica Hydraulic Cement Co.* v. *Whalen,* 117 Ill. App. 23, it is held: "The rule which requires a master to furnish a safe place to work does not apply to that class of cases where the work which the servant is employed to do is constantly producing changes and temporary conditions, for the time being more or less hazardous for those engaged in the work, and where it would be practically impossible to keep the conditions safe and prosecute the work."

In further support of this view is the case of *Lassasso* v. *Jones Bros. Co.,* 88 Vt. 526, 93 Atl. 266, where it is held in substance: "A master must exercise reasonable care and prudence to provide his servants a reasonably safe place to work, but this rule does not apply where the work is such that its progress constantly changes in the conditions and hazards of the work."

In *Horton & Horton* v. *Hartley,* (Tex. Civ. App.) 170 S. W. 1046, the syllabus is: "The rule requiring a master to furnish . . . a safe place . . . does not apply to cases where 'the work . . . is constantly changing, requiring constant renewal of precautions,' to prevent 'danger'."

In *Shields* v. *Bergendahl-Bass Eng. & Const. Co.,* 187 Ill. App. 5, it is held: "The rule that a master must furnish employees with a reasonably safe place to work does not apply where the conditions are temporary and constantly changing by reason of the necessities of the work itself."

Finally, on the question of whether negligence can be predicated upon a failure of appellant in the instant case to provide appellee with a reasonably safe place in which to work, there are many decisions of this court holding, in effect, that no such duty devolves upon appellant. It will suffice to cite and quote from a few of the cases in which such decisions have been rendered.

In the case of *Moline Timber Co.* v. *McClure,* 166 Ark. 364, 266 S. W. 301, this court said: "Learned counsel for defendant invoke the rule, established by decisions of this court and by other authorities, that, where the conditions under which a servant is put to work are constantly changing so as to increase or diminish his safety, it is the servant's duty to make the working place safe and that no duty in that regard rests upon the master. That rule is well established by decisions of this court. *Grayson-McLeod Lbr. Co.* v. *Carter,* 76 Ark. 69, 88 S. W. 597; *Murch Bros. Cons. Co.* v. *Hays,* 88 Ark. 292, 114 S. W. 297; *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140, 124 S. W. 1048; *Fordyce Lbr. Co.* v. *Lynn,* 108 Ark. 377, 158 S. W. 301, 47 L. R. A. N. S. 270; *Sheldon Handle Co.* v. *Williams,* 122 Ark. 552, 184 S. W. 43. That doctrine is an exception to the general rule that the master owes his servant the duty to exercise ordinary care to make the working place and appliances with which to work reasonably safe."

In the case of *Howell* v. *Harvill,* 185 Ark. 977, 50 S. W. 2d 597, injuries were sustained by the appellee by reason of a cave-in or slide of gravel in the gravel pit of appellant. In this case, the court said: "Where the conditions under which a servant works are constantly changing, so as to increase or diminish his safety, it is his duty to make his place of work safe, and no duty in that regard rests upon the master, the servant assuming

the risk arising from the use of the working place and appliances. *Moline Timber Co.* v. *McClure,* 166 Ark. 364, 266 S. W. 301.''

In the case of *Williams Brothers, Inc.,* v. *Witt,* 184 Ark. 606, 43 S. W. 2d 237, the injured employee received his injuries by having his leg caught between a tree and a. wagon frame while he was engaged in the distribution of gaskets along a right-of-way blocked with logs and pipes. He was sitting on the wagon with his legs dangling over the side, and the wagon hit something which threw it to one side. This caused his leg to be caught between the frame of the wagon and a tree. In reversing a judgment for the injuries which appellee had sustained and in dismissing the case, this court said: ''The right-of-way where appellee received his injury was his accustomed place of work, and was constructed in the usual and customary way. In the very nature of things, it was necessary to distribute the pipe which was to be laid and the gaskets which were to be used in joining the pipe along the right-of-way. Except where it crossed fields and roads, the right-of-way ran through the woods, and was necessarily somewhat rough and uneven. Appellee was a man forty-five years of age, and had been engaged in farming and logging all of his life. No other practical way could have been used in laying the pipe. While the accident to appellee was unfortunate, it was not due to the negligence of his master or of fellow-servants, but was an accident for which no one was to blame.''

The same ruling was applied in a case where. a log hauler was injured when a wagon which he was driving caught on a sapling and threw it against him. *Hickman* v. *Weidman,* 186 Ark. 489, 54 S. W. 2d 291.

In the case of *Caddo River Lumber Co.* v. *Henderson,* 194 Ark. 724, 109 S. W. 2d 425, this court, in denying recovery to an employee engaged in taking up steel rails off crossties, his foot becoming entangled in a wire hoop lying in the path along which his duties required him to walk, causing him to fall and be injured; said: ''The work in which appellee was engaged was of a transitory

nature; the crew did not long stay in any one place, and on the day of appellee's injury had covered several miles of track. The station nearest the injury was more than half a mile away. The scene of the injury was not, therefore, a place where men were regularly employed.

"Recovery of damages was sought and had upon the ground that the appellant company had negligently failed to furnish appellee a reasonably safe place in which to work by permitting the presence of the wire hoop on the path along which his duties required him to walk. . . . In applying the well-settled principles of law defining the duty of the master to furnish the employee a reasonably safe place in which to work it must be remembered that appellee was employed in a transitory work. His duties carried him from place to place and over considerable distances. The place of his injury was not a shop or a railroad yard where men are continually at work, but was on a spur track, where the men had been at work for only a short time and where they were not expected to long remain. It would be to impose the highest degree of care, rather than ordinary care, to require the appellant to keep its tracks clean, where and while men were at work, of any and all objects which might occasion injury."

In the instant case the place of work was not stationary. Spoken of as a whole, it covered, no doubt, a broad expanse of newly cleared ground forming the bed of the reservoir of the Little Rock Water Works on the Alum Fork of Saline River. The place of work was constantly changing. There was a new place of work with each succeeding pile of logs. Not only was the place of work constantly changing, but the danger was likewise constantly changing. It was greater or less as the number of stumps increased or diminished. The nature of the surface, whether level or sloping, firm or marshy, no doubt, had its influence on the degree of danger incident to the "snaking" and the piling of the logs. Because of the many changes in the place of work, as well as the changes in the danger incident thereto, it is evident from the cases herein above cited that there was no duty on the part of appellant to use care to provide appellee with a

reasonably safe place in which to work. Under such circumstances, it was the duty of the appellee to use ordinary care to make his own place of work safe. It is our view that under such circumstances negligence cannot be predicated on the alleged failure of appellant to make appellee's place of work safe.

As to whether appellee assumed the risk, many decisions of this court are to the effect that he did. Appellee was an experienced logger. He selected his own place to pile the logs, as well as the route over which to "snake" or drag them to the place where they were to be piled. No one gave him directions as to how the work should be performed. He used his own judgment in this respect. Under these circumstances, he assumed the risk of injury from such hazards as caused the log to be thrown around and strike him on the leg and break it. In the case of *Howell* v. *Harvill, supra,* it was held that where conditions of the work are constantly changing, the servant assumes the risk arising from the use of the working place and the appliances. The same rule was announced in *Moline Timber Co.* v. *McClure, supra.*

Of course, this court has always held that where the danger arising from an employment is so apparent and obvious in its nature as to be at once discoverable to one of ordinary intelligence, an employee, by voluntarily undertaking to perform his work in such a situation, assumes the hazards which exempts the employer from liability on account of injury to the employee. *Missouri Pacific Railroad Co.* v. *Martin,* 186 Ark. 1101, 57 S. W. 2d 1047; *Wisconsin & Ark. Lbr. Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599; *Chicago, R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197; *Ward Furniture Co.* v. *Weigand,* 173 Ark. 762, 293 S. W. 1002; *Howell* v. *Harvill,* 185 Ark. 977, 50 S. W. 2d 597; *Koss Construction Co.* v. *Vanderberg,* 185 Ark. 316, 47 S. W. 2d 41.

We conclude that there was no duty on the part of the defendant, appellant here, to use care to furnish appellee a reasonably safe place in which to work; and we further conclude that appellee assumed the risk of the hazards of his employment, one of which caused his injury. The trial court should have directed a verdict for

appellant. The judgment is, therefore, reversed, and the cause, having been fully developed, is dismissed.