## RAGLAND v. NATIVE LUMBER Co.

[78 South. 542, Division B.]

1. MASTER AND SERVANT. *Injuries to servant. Contributory Negligence. Effect.*
   In a suit for damages it is only where the plaintiff's act is the sole cause of the injury and when defendant's act is no part of the causation, that defendant is free from liability.

2. MASTER AND SERVANT. *Injury to servant. Cause. Evidence.*
   Under the facts in this case, as set out in its opinion, the court held that a servant's death was the result of an accident and not caused by the master's negligence.

APPEAL from the circuit court of Harrison county.
HON. J. H. NEVILLE, Judge.

Suit by Virginia Ragland against the Native Lumber Company. From a judgment for the defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mize & Mize* and *J. C. Ross,* for appellant.

*White & Ford,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellant, the widow of Joe Ragland, deceased, sued appellee, a corporation owning and operating sawmills and logging railroads, for the alleged wrongful and negligent killing of her said husband. The defendant company in having its logs felled and hauled from the woods used a large number of wagons and employees. It appears that Joe Ragland, with other employees, was engaged in loading logs on wagons. The method employed in loading logs was to place a wagon alongside the logs that were bunched for the purpose of being

loaded, and in putting a log on the wagon to attach
one end of a chain to the front bolster of the wagon, and
the other end of the chain to the rear bolster of the
wagon, running the middle of the chain under the log.
A pair of mules would be attached to the chain and
used in pulling the log over skidders onto the wagon.
It was the duty of the deceased to stand on top of the
wagon at one end and stop the log with a cant hook as
it would come up on the skidders over the wagon; and
when the log had been pulled over sufficiently, the mule
lines would be cut from the chain and the log placed
in position on the wagon. On the occasion complained
of the wagon was placed on a hillside with its rear
wheels by a long tall pine tree, some sixty feet high,
that had a dead top. In putting a log on the wagon
Ragland failed to stop the log in its proper place, and
the log ran clear off the wagon, and one end of it struck
the tree with such force and violence as to jar aloose
a dead limb from the top of the tree, and this dead
top fell, struck Ragland upon his head, and inflicted
injuries from which he shortly thereafter died. It is
charged in the declaration that there were three crews
of laborers, one called the bunch crew, whose duty it was
to bunch the logs in the woods; another, loading crew,
whose duty it was to load the logs upon the wagon; and
the third crew hitched their teams to the loaded wagons
and hauled the logs to the logging railroad. It appears
that Ragland belonged to the loading crew, and that
his duty was to assist in loading the logs. The declara-
tion charges that it was the duty of the defendant com-
pany to inspect the grounds where the logs were bunched
and to see that the deceased had a safe place to work,
and that this duty was breached, resulting in Joe
Ragland's death. Upon issue joined, the case was tried
by the court and jury, and the jury returned a verdict
in favor of the defendant. From the judgment based
on this verdict appellant prosecutes an appeal, assigning
as error the giving to appellee of the following:

"The court instructs the jury that, unless the plaintiff has shown negligence in this cause and that such negligence was the proximate cause of Joe Ragland's injury, you must find for the defendant."

It is contended that the defendant relied upon the alleged contributory negligence of Joe Ragland, and that under our comparative negligence statute plaintiff had a right to recover if the defendant was guilty of any negligence whatever that contributed in whole or in part to the injury complained of. It is contended that this instruction placed too high a burden upon the plaintiff and was prejudicial.

The court gave to the plaintiff in this case two instructions, drawn in strong terms, announcing that it was the duty of the defendant company to use due care to make a reasoable and careful inspection of the place where the deceased had to work; that it was the duty of the defendant to furnish the deceased with a reasonably safe place in which to work; and that, if the jury believed there was negligence on the part of the defendant in not making the said inspection and in furnishing a reasonably safe place to work, as a result of which Joe Ragland was injured, then the jury must find for the plaintiff. The instructions, of course, are more elaborately drawn, but this states the substance. The instruction complained of does not tell the jury that the negligence must be the sole proximate cause of the injury. The plaintiff did not ask for any instruction in reference to the alleged contributory negligence of the deceased or amplifying the thought conveyed in the instruction which appellant now complains of. Under our statute providing that contributory negligence shall not bar a recovery, there is some merit in the argument of counsel for appellant that, if the injury complained of resulted in whole or in part from the defendant's negligence, the use of the term "proximate cause" might be misunderstood, and we have no reason to

disagree with the language of the court in *Railroad* v. *Lindsay*, 201 Fed. 836, 120 C. C. A. 166, in saying:

"It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability."

But in the case at bar appellant completely failed to show any negligence on the part of the defendant. The proof shows that the tree, a portion of the dead top of which fell and killed Joe Ragland, had the appearance of being a green or live tree at the bottom or trunk; that the dead top would not ordinarily attract the attention of any one on the ground; and that there was no cause to suspect that the tree was in fact dangerous. This may be illustrated by the testimony of one of the plaintiff's own witnesses and by the following question and answer:

"Q. Was there anything to keep a man standing off sixty feet from that tree from seeing the top of that tree? A. I don't know that he could have seen it at sixty feet, had to go back some piece back. It had a bunch of green limbs, and its top was straight up, and I don't know how far he would have to go back to see it."

Furthermore, Ragland appears to have been the foreman of his loading crew, as shown by the following extract from the testimony of another of plaintiff's witnesses:

"Q. The loading crew would have three men? A. Yes, sir. Q. Who was the loader in this particular place? A. Ragland. Q. And he had charge of the loading of the wagon? A. Yes, sir. Q. Ordinarily, when you placed the wagon, who would show you where to place the wagon, the wagons that were to be placed? A. Ragland."

It is manifest from the testimony that only one load was picked up beside the tree that caused the injury; that this tree did not appear to be dangerous; that the defendant company had no occasion to look for danger

sixty feet at the top of the tree or to anticipate that a dead limb would fall or be knocked off in the process of loading. This suit is a somewhat strained effort to impose liability when none in fact exists. The injury is more the result of an unfortunate chain of circumstances which the master could not foresee or control, or, to state otherwise, an unfortunate accident.

*Affirmed.*