CYBUR LUMBER COMPANY v. ERKHART.

[79 South. 235, In Banc.]

1. JUDGMENT. *Absolute non-suit. Effect.*
   Where the federal district court granted to plaintiff an absolute nonsuit, this placed the parties in the same attitude as if the suit had never been filed and plaintiff could sue in the state courts.

2. MASTER AND SERVANT. *Injury to servant. Safe place to work.*
   A lumber company was not liable to a tongman, operating a skidder in an open forest for injuries sustained when he walked

to slacken a line and was struck by a broken tree falling from its stem, on the ground that the master failed to furnish the servant with a safe place to work.

3. SAME.
The exception to the rule requiring the employer to make safe the place where his employees are working, exist where the conditions of the place are constantly changing as the work progresses.

APPEAL from the circuit court of George county.
HON. JAS. H. NEVILLE, Judge.

Suit by Corbet Erkhart against the Cyburn Lumber Company and another. From a judgment for plaintiff, the named defendant appeals.

The facts are fully stated in the opinion of the court.

*Gex & Waller* and *J. C. Henriques,* for appellant.

We cite the following authorities in substantiation of our contention that the master is not required to guard against the dangers which necessarily arise in the progress of the work which is changing and shifting in its character or which are created by the workmen themselves in the prosecution of that work. *Bennett* v. *Crystal Carbonated Lime Co.,* 124 S. W. 608; *Gunszfsky* v. *Peoples Gas L. & C. Co.,* 145 Ill. 255; *Simpson* v. *So. Ry. Co.,* 69 S. E. 683; *Askdraft* v. *Roberts & Schaeffer,* 155 Ill. App. 88; *Morgan* v. *Wabash R. Co.,* 158 Ill. App. 344; *Mullin* v. *Genesee Electric Light Co.,* 95 N. E. 689; *Nylund* v. *Duluth & N. W. Ry. Co.,* 143 N. W. 739; *Lehy Cement Co.* v. *Bass,* 103 N. E. 483, (Ind.); *Sohold* v. *Warden Allen Co.,* 144 N. W. 650; *St. Louis I. M. & S. Ry Co.* v. *Baker,* 163 S. W. 152; *Bertolami* v. *U. S. Engineering & Con. C.,* 105 N. Y. (S. P.) 90; *Shields* v. *Bergendahl-Bass Eng. & Const. Co.,* 187 Ill. App. 5; *Horton & Horton* v. *Hartley,* 170 S. W. 1046 (Tex.); *Losassova* v. *Jones Bros. Co.,* 93 Agl. 266 (Vermont); *Utica Hydraulic Cement Co.* v. *Whalen,* 117 Ill. App. 23;

*Bradley* v. *Chicago, etc., Ry. Co.,* 138 Mo. 293, 39 S. W. 763; *Zeingmeyer* v. *Charles Goerta Lime & Cement Co.,* 88 S. W. 139, 133 Mo. App. 330; *Mehan* v. *St. Louis, etc., R. R. Co.,* 90 S. W. 102, 114 Mo. App. 396; *Livingston* v. *Saginaw Place Glass Co.,* 109 N. W. 431, 146 Mich. 236; *Wolters* v. *Summerfield Co.,* 140 N. W. 388, (Iowa); *Jacopac* v. *Newport Mining Co.,* 140 N. W. 1060, 153 Wis. 176; *Pern* v. *Wussow,* 129 N. W. 622, 146 Wis. 489; *Knudsen* v. *LaCrosse,* 130 N. W. 519, 145 Wis. 394; *Heatley* v. *Fuller Co.,* 166 Ill. App. 85; *Piepho* v. *Merchants L. & Tr. Co.,* 168 Ill. App. 511; *Dunn* v. *Great Lakes Dredge & Dock Co.,* 126 S. W. 833; *Langbrne* v. *Simongton,* 66 So. 85; *Whitson* v. *Am. Bridge Co. of N. Y.,* 166 S. W. 814; *Lowrie* v. *Oxendine et al.,* 69 S. E. 131; *Rumbley* v. *So. R. Co.,* 69 S. E. 416; *Mercer* v. *Lloyd Transfer Co.,* 110 Pac. 389; *Wallsend Coal & Coke Co.* v. *Shields,* 167 S. W. 918; *Dasher* v. *Hocking Mining Co.,* 212 Fed. 626; *American Milling Co.* v. *Bell,* 141 S. W. 1191; *Edgar* v. *Brooklyn Heights R. Co. et al.,* 131 N. Y. S. 286; *Caciapore* v. *Transit Const. Co.,* 132 N. Y. S. 572; *Producers Oil Co.* v. *Bush,* 155 S. W. 1032; *Louis* v. *Gehlen,* 122 N. Y. S. 89; *Lantry Sharpe Cont. Co.* v. *McCracklin,* 134 S. W. 363; *Morgan Const. Co.* v. *Frank,* 148 Fed. 964; *Collingan* v. *City of N. Y.,* 140 N. Y. S. 271; *Cully* v. *Northern Pac. Ry. Co.,* 77 Pac. 202.

*Mize & Mize* and *O. Moss,* for appellee.

The circuit court of appeals in reversing the judgment of Corbet Erkheart for five thousand dollars against the Cyburn Lumber Company (151 C. C. A. p. 601) held two things: 1. That the foreman Norman Clarke was as to his general duties a fellow-servant (Record, p. 18, copy opinion). We need not discuss that phase of the case for the purpose of this brief. 2. That, so far as the duty of the master to furnish

Corbet Erkhert a reasonably safe place in which to work is concerned, Norman Clarke was a vice principal, yet on this particular occasion, even though he was a vice principal as to furnishing him with a reasonably safe place in which to work, Erkhert could not recover because he was furnished a reasonably safe place in which to begin work, and to use the language the court in said opinion, found at page 23 of record, adopting the doctrine of cited cases holding this, ''where the master has used reasonable diligence to provide a reasonably safe place for the servant to perform his work, and in the prosecution of that work changes are produced in the conditions of the place where the servant is required to work and these conditions are in the performance of the work for which the servant is employed, and only temporary, the rule does not require the master to keep the place reasonably safe at all times under such changing conditions, and the rule has no application where the master does not make or create the conditions, but they are created by the progress of the work and the men engaged in it.''

But this is not the doctrine of the Mississippi court and the record that the court had before it does not bear out the facts stated by the court on which this doctrine was announced.

In the case of *Finkbine Lbr. Co.* v. *Cunningham,* 101 Miss. 292, the court at page 301 uses the following language: ''It was not only the duty of the appellent to furnish the appellee with a reasonably safe place in which to work when he started at his work, but this was a continuing duty.'' *Sante Fe R. R. Co.* v. *Holmes* U. S. Sup. Ct., 50 Law Ed. 1094, 1097; *Kreigh* v. *Westinghouse Church, Kerr & Co.,* U. S. Sup. Ct. 53 Law. Ed. 985; *Annie Hough* v. *T. & P. R. R. Co.,* 100 U. S. Sup. Ct. 25 Law Ed. 615, the court at p. 616, left column; *Fort* v. *Railroad,* 110 Mass. 241, and 4 Thompson on Negligence, sec. 4926.

With the foregoing modification made by said agree-
ment, the record is the same as in the circuit court of
appeals. So the record in this court is that appellee,
early on the morning of his injury went out into the
woods from the skidder to tong logs; that, whenever
he tonged a log the log was hauled into the skidder and
tongs sent back out in the woods to appellee by what
is known as a re-haul;" that, after he had been out
in the woods a short time, this bay tree was pulled
down by the foreman and Gibson and Batley, and fell
along the guy line; that appellee, out in the woods,
knew nothing of this tree being broken down as afore-
said, and when he came in to the skidder, several
hours after the tree had been broken, he was ordered
to help in taking down the skidder by the foreman and
no notice was given him of the proximity of the broken
tree to the guy line, an altogether different record from
what the circuit court of appeals found the record to be,
presenting clearly a question for the jury to determine
whether or not it was negligence on the part of ap-
pellant to permit said broken tree to remain in the
position it did for said length of time.

Now, even conceding that Clyde Gibson was a
fellow-servant when he negligently ordered appellee
to go to the guy line and give him more slack, yet
if appellant was negligent in furnishing appellee a
reasonably safe place in which to work which is, as
shown heretofore, a continuing duty, the appellant
would still be liable; for when the negligence of the
master and the negligence of a fellow-servant combine
to injure a servant, the master is still liable. *Kreigh
v. Westinghouse, Church, Kerr & Co.,* U. S. Sup. Ct.
Rep. 53, Law Ed. 984.

The Comentez case cited by appellant was a case
growing out of contract, on some notes, where judg-
ment was joint and several and was an entirety and
could not be reversed as to one without being reversed

as to all. But this is not true in a case of joint tortfeasors, which is the case here.

We respectfully submit that this case should be affirmed.

STEVENS. J., delivered the opinion of the court.

Appellee, plaintiff in the court below, instituted this suit to recover damages for alleged personal injuries sustained by him while employed by appellant, the Cybur Lumber Company, a corporation owning and operating sawmills and a logging railroad. Plaintiff was employed as a log "tong" man, one of a crew engaged in operating a "ground" or "possum dog" skidder placed in the woods and used for the purpose of pulling logs from the forest and bunching the sawlogs in convenient places to be loaded upon wagons by the team crew and conveyed to the logging railroad.

At the time plaintiff was injured the crew consisted of Norman Clarke, the foreman of this particular crew, Clyde Gibson, G. T. Batley, and appellee, Erkhart. The skidder could be moved from place to place by means of cable and slides resting on the ground, and upon being put up was operated under its own steam, and a drum, around which there was a steel cable, would draw in the logs. There were tongs attached to the ends of the cable to be fastened around the logs, and it was the duty of plaintiff to apply the tongs to the log, and the flagman would thereupon signal the drum man, who would start the machinery and pull the log to its proper place. The cable ran through a pulley attached to a tree some fifteen or twenty feet from the ground, and to offset the strain upon the tree guy wires or lines were run to and attached to other trees some thirty or forty feet away. The skidder could draw in logs within a radius of nine hundred feet from all sides, and all the testimony tends to show that the logs being pulled in would

encounter obstructions and that the operations were more or less dangerous.

On the occasion complained of plaintiff attached his cable to a log which lay on the "off side" of a small bay tree, and in pulling in this log the cable pulled against the bay tree and broke the trunk of the tree some ten feet from the ground, and the top of the bay tree thereupon fell over on the ground, but the trunk still rested upon the stump.

There is testimony tending to show that it was the duty of the plaintiff to assist in setting up and taking down the skidder as the operations changed from place to place; that on the day of the accident the crew foreman, Norman Clarke, directed that the apparatus be dismantled for the purpose of moving to another place. Batley and Gibson were engaged in unfastening the guy line that ran along near the broken bay tree; Batley undertaking to unfasten the guy line at the trunk of one tree while Gibson was up the other tree at the pulley. Gibson from his elevated position called out, "Give me some slack." This remark appears not to have been directed to any one particularly, but on hearing the remark, plaintiff, who was then sitting down near the skidder, arose and walked over to pull on the guy line, and thereby give Gibson slack, when, being in close proximity to the broken bay tree, the trunk of the bay tree slipped off of its stump and fell on plaintiff and broke his leg, and for the injury thus inflicted he brings this action.

All the testimony shows without dispute that the foreman, Clarke, was not present at the time Gibson called out to his coworkers to give him slack, and gave no instructions to plaintiff on this occasion, except in general terms to request that he assist in dismantling the skidder.

At the time the bay tree was broken, plaintiff was out in the woods tonging logs; plaintiff having gone

out in the woods early in the morning, and not returning to the skidder until about eleven thirty a. m., when, the machinery was dismantled and plaintiff was hurt. It appears that the bay tree was broken about seven or eight o'clock in the morning, and while Batley and Gibson had knowledge of the fact that the tree was broken, there is no testimony tending to show that either the foreman or any member of the crew knew the broken tree was likely to fall from the stump, or anticipated that it was dangerous. It further appears that the guy line which plaintiff pulled on was not directly in contact with the broken tree, but, for some reason which the evidence does not explain, the tree fell from its stump as the plaintiff either walked under it or came in close proximity to it.

Appellee first filed his suit in the federal district court for the Southern Division of the Southern District of Mississippi at Biloxi, and there obtained a judgment in the sum of five thousand dollars. Appellant prosecuted an appeal from the judgment so rendered, and the circuit court of appeals reversed the district court. The statement of facts and the opinion of the court can be found in 238 Fed. 751, 151 C. C. A. 601. When the cause was remanded to the federal district court, the plaintiff, over the objection of the defendant, took a nonsuit; the defendant at the same time, under its interpretation of the opinion of the circuit court of appeals, moving the district court to grant it a peremptory instruction. Judgment was entered by the federal district court allowing plaintiff to take a nonsuit, and appellant again appealed to the circuit court of appeals, and judgment of nonsuit was affirmed as reported in 247 Fed. 284. After appellee was granted a nonsuit by the federal district court, and before the appeal of appellant from the judgment of nonsuit had been con-

sidered by the circuit court of appeals, appellee filed the present suit in the circuit court of George county, and in the present suit joined his fellow-servant Clyde Gibson as party defendant with appellant. To the declaration in the present action appellant company filed a plea in abatement, contending that, inasmuch as an appeal had been prosecuted from the order of the district court granting a nonsuit, there was a pending suit in another court of competent jurisdiction. Plaintiff demurred to this plea, and the demurrer was by the court sustained. Thereupon the parties entered into an agreement that the same testimony that had been introduced in the federal district court should be read to the jury as the testimony in the present action. Appellant further contended that the suit in the federal district court and the judgment rendered therein was *res adjudicata.* Appellant also contended that there was no liability whatever.

Clyde Gibson made no defense, and it appears that no formal judgment by default was entered against him, and no writ of inquiry as to him was granted further than to submit the entire cause to the jury upon the evidence read under the agreement aforesaid. There was a verdict in favor of the plaintiff for three thousand dollars, and from the judgment based thereon appellant prosecutes this appeal.

We are not impressed with the argument, and not inclined to the view advanced by counsel for appellant that the judgment rendered by the federal district court was an adjudication on the merits and constitutes *res adjudicata.*

It is conceded that the federal district court granted to plaintiff an absolute nonsuit, and this places the parties in the same attitude as if the suit had never been filed. This manifestly is the holding of our court, and federal decisions are not in conflict therewith.

But on the merits plaintiff's case must fail, and the judgment appealed from must be reversed. The sole ground of negligence complained of is the alleged failure of the defendant company to furnish plaintiff with a reasonably safe place in which to work. There is no question but that this duty of the master to furnish employees a reasonably safe place to work is a continuing, nondelegable duty, frequently recognized and enforced by our courts. But this doctrine cannot be invoked as a basis of alleged negligence in the present case. We are not confronted with a case where the employee is assigned to work in any kind of building or structure, or at machinery that is at all stationary. The controlling duties of the plaintiff here placed him in the open pine forests of South Mississippi, where general lumbering is being done, and his duties as a tong man carried him from log to log, and place to place, over a wide area. The very work of "snaking" and bunching sawlogs in the forest by the use of a skidder was inherently dangerous. It may be conceded that there was sufficient testimony to show that plaintiff was under a general obligation to assist in putting up and dismantling the skidder when the crew moved from place to place in the woods, and that plaintiff at the time he was injured was in the performance of a general course of duty. He was not, however, hurt by any kind of defective machinery or appliance. He was not even engaged in attempting to remove the broken tree. It so happened that when he undertook to slacken the wire he walked in close proximity to the tree and was injured. The tree was not made to fall by any negligence of the master or fellow-servant. The breaking of the bay tree by the steel cable several hours previous to the accident resulting in injury to plaintiff was a very natural occurrence and incident to the character of work being done

by the crew. The top of this bay tree when it was broken fell over and rested on, the ground. After it was broken neither the cable nor guy wire directly touched the broken tree. The company was not interested in taking down or removing the broken tree. No purpose could be served by doing so.

At the time plaintiff was injured Norman Clarke, the foreman, was not present, and it is manifest, therefore, that the foreman did not expressly direct plaintiff into a dangerous place. From the evidence the foreman had no occasion to anticipate that plaintiff would go under or in close proximity to the broken tree, or, even if he should do so, that the trunk of this tree would slip from its stump. Very probably the broken trunk of the bay tree rested very insecurely on the stump, but no one appreciated this fact until the plaintiff was injured. Just why the tree fell from the stump no one of the witnesses seems to know. Should we assume that touching the guy wire caused it slightly to jar the broken tree, it does not follow that the defendant company had violated any duty to furnish a reasonably safe place to work. The presence of the plaintiff at or near the broken tree was momentary, and his mission in walking over to slacken the guy wire was purely temporary. It was in no sense a place in which plaintiff had been assigned to work. The most that could be said would be the contention that plaintiff was ordered into a place of danger. But the proof fails to sustain any such contention, and in fact no such contention is made at the bar by counsel. The only direction that was given to plaintiff to walk near the tree was the general request of Clyde Gibson, a fellow-servant, and it is conceded that Gibson had no authority to direct when and where plaintiff should work.

As stated by Mr. Labatt: "The rule that it is the duty of a master to exercise ordinary care to provide a reasonably safe place of work for his servants is held not to be applicable to cases in which the very work at which the servants are employed is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds are regarded as being the ordinary dangers of the employment, and by his acceptance of the employment the servant necessarily assumes them." Volume 3 (2 Ed.), par. 1177.

And in 18 R. C. L. par. 96, it is said: "An exception to the rule requiring the employer to make safe the place where his employees are at work is said to exist where the conditions of the place are constantly changing as the work progresses."

In the case note to *Citrone* v. *O'Rourke Engineering Construction Co.*, 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340, it is said:

"The decisions upon this subject are harmonious, and of late this exception has been interposed quite frequently against the servant's demand for damages. The reason for relaxing the rule in such cases is that it is more than the master can do to keep a changing working place safe from transient, shifting hazards which spring up only as the work advances. The servant is supposed to know this. He therefore assumes the risk when he goes to work. It is sometimes said in these cases that the servant has a better chance to become aware of the fleeting dangers that threaten him than the master, and that the servant therefore assumes the risk of injury therefrom."

The danger to the servant in this case is manifestly a transitory peril which the master could not foresee or provide against.

If a large sawmill corporation had devolved upon it the duty of following its servants into the forest and securing each of them against injuries from falling trees, limbs, or other accidents in the woods, then in all logging operations the master would become absolute insurer of the safety of such employees. Their very work carries them from place to place as they fell, gather, and haul logs, and the hazard of an employee in any particular spot or place is necessarily temporary and transitory. Surely the master is not required to make safe the broad acres of woods and see to it that employees of the lumber company are not hurt by defective, broken, or falling trees. This is said only in reference to a safe place to work. It is a different question for the master to direct his servant into a place of known danger.

The general rule which we are discussing has its proper and equitable limitations and authorities on the point are collated in the case note to *Citrone* v. *O'Rourke Engineering Construction Co., supra.* We refer to the case note to *Hagin* v. *Southern Bell Telephone Co.* (Ga.), 20 Ann. Cas. 248, and cases collated by Mr. Labatt in the footnotes to paragrapt 1177, *supra.*

There is a vital distinction between those cases in which the place itself is constantly shifting or changing and those cases in which the position of the servant is stationary. This fact differentiates the present case from *Finkbine Lumber Co.* v. *Cunningham,* 101 Miss. 292, 57 So. 916. In the latter case is was indeed held to be the duty of the master not only to furnish a reasonably safe place in which to work, but that "this was a continuing duty." In the latter case Cunningham was engaged in the operation of machinery for making staves. The material out of which the staves were being made was first put in

a cradle and shoved against saws, and the ends were chopped to make the material the proper length. It was no part of Cunningham's duty to remove those sawed-off ends and other material accumulating around the edge. That was an entirely different case from the present suit. The present action is also materially different from certain reported cases in which the servant was employed in mines, quarries, or excavations.

In *Wolters* v. *Summerfield Co.*, 160 Iowa, 127, 140 N. W. 388, the court held:

"The duty to furnish a safe place to work does not apply to temporary perils arising in the course of employment."

In *Jakopac* v. *Summerfield Co.*, 153 Wis. 176, 140 N. W. 1060, it is held:

"The rule that an employer must furnish the employee a safe place to work does not apply . . . where the working place is constantly changing, and the employee is assisting in making the changes."

In *Meehan* v. *St. Louis, etc., R. R. Co.*, 114 Mo. App. 396, 90 S. W. 102, the court held: "The rule requiring a master to furnish a servant with a reasonably safe place to work does not apply in the case of a servant employed to assist in laying a railroad track, since the place is constantly undergoing a change in character by the very work which the servant is performing, and the work requires a continuous change of place."

To the same point is the case of *Zeigenmeyer* v. *Charles Goertz Lime & Cement Co.*, 113 Mo. App. 330, 88 S. W. 139, where the syllabus reads: "A master is only required to exercise reasonable care to provide as safe a place for the performance of the services by a servant as the character of the work to be done will permit, and is not bound to furnish a safe place, where the danger is temporary or arises from the hazard and progress of the work itself."

In. *Utica Hydraulic Cement Co. v. Whalen,* 117 Ill. App. 23, it is held: "The rule which requires a master to furnish a safe place to work does not apply to that class of cases where the work which the servant is employed to do is constantly producing changes and temporary conditions, for the time being more or less hazardous for those engaged in the work, and where it would be practically impossible to keep the conditions safe and prosecute the work."

In further support of this view is the case of *Lassasso v. Jones Bros. Co.,* 88 Vt. 526, 93 Atl. 266, where it is held in substance: "A master must exercise reasonable care and prudence to provide his servants a reasonably safe place to work, but this rule does not apply where the work is such that its progress constantly changes in the conditions and hazards of the work."

In *Horton & Horton v. Hartley* (Tex.), 170 S. W. 1046, the syllabus is: "The rule requiring a master to furnish . . . a safe place . . . does not apply to cases" where "the work . . . is constantly changing, requiring constant renewal of precautions," to prevent "danger."

In *Shields v. Bergendahl-Bass Eng. & Const. Co.,* 187 Ill. App. 5, it is held: "The rule that a master must furnish employees with a reasonably safe place to work does not apply where the conditions are temporary and constantly changing by reason of the necessities of the work itself."

In *Morgan v. Wabash R. R. Co.,* 158 Ill. App. 344, it is held: "The rule that the master must use reasonable care to furnish a reasonably safe place for the servant to work is subject to one universal exception, that where the master has used reasonable diligence to provide a reasonably safe place for the servant to perform his work, and in the prosecution of that work changes are produced in the conditions

of the place where the servant is required to work, and these conditions are in the performance of the work for which the servant is employed, and only temporary, the rule does not require the master to keep the place reasonably safe at all times under such changing conditions, and the rule has no application where the master does not make or create the conditions, but they are created by the progress of the work and the men engaged in it," etc.

The circuit court of appeals speaking through Grubb, District Judge, considered this very case upon the very testimony which is now before us, and in a well-considered opinion, among other things, said:

"It is clear that all of the workmen engaged with the skidder, including Clarke, on the day of the accident, were fellow-servants of the plaintiff, within the common-law rule of nonliability, which governs the relations of master and servant in Mississippi, except in case of railroad employees. The case of *Moss v. Compress Co.*, 202 Fed. 657, 121 C. C. A. 67, is different from this case, in that in that case the servant; who was held to be a vice principal, was in complete charge of the work of dismantling a compress at a distance from the usual place of business of the defendant, with no one superior to him in the service at the place of work, and with complete control over the means and methods to be employed in the work of demolition. In this case the evidence shows that the defendant had a, superintendent in charge of its operations in the woods, under whom Clarke was working and with authority to direct Clarke in the means and methods of such operations. The work being done at the time of the accident was part of those operations. It is true that the superintendent was not at the place where the accident happened on the day it happened. It is, however, true that he was in charge of the department of work for the

defendant in which the plaintiff was engaged when injured, and that Clarke was subordinate to him in that department. It follows that Clarke was not in charge of a department of the defendant's service in the sense that would constitute him a vice principal under the federal decisions. We think therefore that the nonliability of a master in Mississippi for the default of a fellow servant precludes a recovery by the plaintiff for the negligence of Clarke in this case.

"It is contended, however, that the negligence of Clarke was in not removing the fallen tree after its fall and before he accident, and that, a reasonable time having elapsed between these events, Clarke's failure constituted negligence in the matter of defendant's nondelegable duty of furnishing the plaintiff a reasonably safe place in which to do his work, and that the fellow-servant rule is no protection to defendant against such a breach of duty. This argument would prevail but for the conceded fact that Clarke was guilty of no negligence in the original selection and equipment of the place of work, in the doing of which his acts were binding on the defendant, though he was a mere fellow servant of plaintiff, but, if at all, only in the failure to correct a condition that arose after the work had been entered upon, during its progress, and which was caused by the conduct of the workmen themselves, or some of them. It is also true that no vice principal of the defendant was at the place of work after the condition complained of arose, and saw or should have seen the danger in time to have remedied it before the plaintiff was hurt and negligently failed to do so; nor was there shown any negligent failure on the part of the defendant to exercise such supervision as was essential to due care. The facts in the record present the ordinary case of an employee, who has been origi-

nally furnished with a safe place in which to do his work by his master, injuried by a defective condition which arose thereafter and which was created by the fellow servants of the injured employee during the progress of the work and as an incident thereto. It is well settled that an injury due to such a defective condition is caused by the negligence of a fellow-servant with respect to a duty that is delegable by the master, and for which the master is not liable. In a case of this kind the principle that the master is liable when the injury is due to the concurring negligence of himself and that of a fellow-servant of the injured person does not obtain, since the negligence in this case was that solely of the fellow servant, and of a kind not legally attributable to the master.''

It is now argued that the conclusion reached by the circuit court of appeals was bottomed upon the holding that the servant was originally furnished a safe place in which to work, but injured by a defective condition created by a fellow-servant and arising after the work commenced, and that this holding is in conflict with the *Cunningham Case, supra.* As we interpret the opinion of the circuit court of appeals, the main holding is contained in the following sentences:

''It is well settled that an injury due to such a defective condition is caused by the negligence of a fellow servant with respect to a duty that is delegable by the master, and for which the master is not liable.''

And: ''Nor was there shown any negligent failure on the part of the defendant to exercise such supervision as was essential to due care.''

The court was here emphasizing, we think, the proposition that if there was any kind of negligence in this case, it was the negligence of a fellow-servant for which the master was not responsible. The federal

court nowhere held that there was in fact any negligence on the part of the appellant, but on the contrary, they held squarely that a verdict should be directed for the defendant. This is the conclusion to which we are forced in our consideration of the same case and upon the same facts. The injury here complained of is more the result of an unforeseen accident. The plaintiff, of course, did not himself think there was any danger, and what he and his fellow-servants, Gibson and Batley, failed to see he now asks shall be charged up against his master, and that too when neither the master nor the master's foreman was present.

Much might be said about the assumption of risk in this case, but, aside from any discussion of that question, it is elementary that the negligence of the master must be pointed out and proven. It cannot be said that any breach of duty of the master here contributed in whole or in part to the injury complained of.

It follows that the peremptory instruction which was requested by the defendant and refused by the court should have been given, and that the judgment of the learned circuit court must be reversed, and judgment given here for appellant.

*Reversed, and judgment here for appellant.*

ETHRIDGE, J. (dissenting).

I dissent in the foregoing case for the reason that in my opinion the appellee was directed by the woods foreman, who occupied the place of the master, to take down the skidder; that this order involved doing whatever was necessary to perform the work. Erkhart went to the appropriate place to release the guy wire when called upon by Gibson, who had climbed up the tree to release it there, and he did this without knowledge of the position of the tree

broken and by which he was injured. It was the duty of the master before directing the work to be done to see that the place of work was in a reasonably safe condition. It is manifest from this record that the broken tree was resting on the guy wire, and that the tree fell because of slacking the guy wire which supported it. Foreman Clarke was not a fellow-servant, but was representative of the master. The authorities cited in the main opinion are not applicable, in my judgment, to the facts of this case, and I have no quarrel with the authorities cited.