GREEN LUMBER COMPANY, et al. *v*. SULLIVAN.

In Banc. March 27, 1950.

No. 37426 (45 So. (2d) 243)

Jack McDill and R. S. Tullos, for appellants.

R. C. Russell, O. O. Weathersby and L. D. Pittman, for appellee.

McGehee, C. J.

The judgment appealed from is for damages sustained by the plaintiff, Charles P. Sullivan, when he was severely injured by being struck by a falling limb while engaged in cutting trees and sawing logs for his employer, T. P. Moran, one of the defendants to the suit.

The theory on which the declaration was drawn is that there were crews of men who "were cutting timber next to or adjoining each other along and where plaintiff was required to cut and fell the timber he was directed to cut", and that this made the place of work an exceedingly dangerous one; that the plaintiff was directed "to cut down a tree very near another tree being then and there cut down by another employee of defendants, in an adjoining drift or through to the one where plaintiff was then and there felling his tree; that the said tree so cut by the other employee near to plaintiff fell first, and as

the tree that plaintiff cut fell, they collided, or their branches came in contact with each other, and a limb or one of the branches from one of said trees falling together struck plaintiff, which was caused by said trees coming in contact with each other'', and that by reason thereof the plaintiff was knocked down and his back broken or severely injured.

In other words, the alleged liability of the defendants is predicated on the holding in the case of Benton v. Finkbine Lumber Company et al., 118 Miss. 558, 79 So. 346, wherein it was held to be the non-delegable duty of the master to excercise reasonable care to furnish the servant with a reasonably safe place in which to work, and to provide for warnings to the men when the trees were about to fall which were being cut on one strip of timber in close proximity to the men who were cutting on the adjoining strip.

In submitting his proof, the plaintiff made no attempt to sustain the charge of negligence alleged in the declaration, based upon the principle announced in the Benton case, but frankly conceded that at the time of his injury there were no crews cutting timber near enough to him to permit a falling tree or limb to reach him. It was his theory, when testifying, that the limb which struck him was from a poplar tree which had been cut on an adjoining strip of timber by another crew some time prior to the occasion of his injury; that the limb which struck him fell out of the top of the tree that he was helping to saw down; that the ''best I could tell it was a poplar limb come from a pine tree that I was cutting''; and that he looked to see whether it was safe to cut the tree before he started cutting it, and that he thought it was safe, since he did not see the limb in the tree. The plaintiff had been engaged in the work of sawing down trees in the woods for approximately twenty-five years. He contends, however, that the defendants were negligent in not furnishing him a reasonably safe place in which to work, due to the fact that the limb was lodged in the

tree; although it was not shown that his employer knew it was there, or should have known thereof.

The plaintiff further testified that although the limb was not but "four or five inches through", the length of which was not mentioned in the testimony, it had to be lifted off his back by four men. These men, as witnesses for the defendants, testified that the accident was occasioned by a treetop, which was resting on a stump about 50 inches high and about 12 feet from the tree which the plaintiff was helping to saw down, becoming dislodged from the stump when the plaintiff's tree fell; that the limb complained of pressed him to the ground; and that it required the efforts of three of these men to lift the weight of the top so as to relieve the pressure of the limb against his back while the other member of the group removed the plaintiff from underneath the limb.

It seems from the testimony for the defendants that the falling of the tree sawed down by the plaintiff and his helper was the cause of the treetop being dislodged from the stump, although it is not shown that the falling tree struck it.

However, for the purpose of determining whether or not the defendants were entitled to the peremptory instruction asked for, we shall assume that the plaintiff sustained his injury by the falling of a limb out of the top of the tree that he was helping to saw down, as he testified, and that this limb had become lodged in his tree after being broken off another tree which had been cut on an adjoining strip of timber by another crew at some time prior to the occasion of the injury, and that he was unable to see the limb when he looked up in his tree before beginning to saw it down. When we assume that the accident thus occurred we are unable to say on what principle of the law of negligence, as between master and servant, the liability of the master can be predicated. To paraphrase the language of the Court in Ragland v. Native Lumber Co., 117 Miss. 602, 78 So. 542, a case where

a log rolled off a wagon on which the plaintiff was at work in loading logs, and one end of it struck a tree with such force and violence as to jar loose a dead limb from the top of the tree, and this dead top fell, struck Ragland upon his head, and inflicted injuries from which he shortly thereafter died, we would say that the appearance of the tree that the plaintiff Sullivan in the instant case was helping to saw down would not, as the court there said, ordinarily attract the attention of any one on the ground; that there was therefore no cause to suspect that the tree was in fact dangerous by reason of having a limb lodged therein which the plaintiff admits that he was unable to see after looking up the tree before undertaking to saw it down; and that the defendant was not negligent in failing to know that there was anything lodged in the tree, or in failing to anticipate that the limb would fall on the plaintiff as his tree began to fall, instead of the limb remaining in the top of the tree as the latter fell to the ground.

On the other hand if we assume that since the defendants put on their proof and undertook to show that the accident occurred in the manner testified to by their witnesses as hereinbefore set forth, still it does not appear that the defendants were negligent in failing to anticipate that the treetop which rested on a stump 50 inches high, and which stump was 12 feet away from the tree which the plaintiff was sawing down, would become dislodged so as to fall on him after his tree began to fall, or that he would either go under the lodged treetop or in some manner place himself where it could fall on him in the event it should become dislodged from the stump. No explanation is given as to why the plaintiff, when leaving his falling tree, went to the place where this lodged treetop, resting on a stump only 50 inches high, could fall on him, if we look to the defendants' testimony as to how the accident occurred, as aiding the plaintiff's case.

We are of the opinion that the defendants were entitled to a peremptory instruction whether we view the case as being that which was sought to be made by the plaintiff's testimony or that disclosed by the testimony on behalf of the defendants. Cybur Lumber Co. v. Erkhart, 118 Miss. 401, 79 So. 235; Buckeye Cotton Oil Co. v. McMorris, 172 Miss. 99, 158 So. 799; Ragland v. Native Lumber Co., supra.

In Cybur Lumber Co. v. Erkhart, supra, the trunk of a bay tree had been broken some ten or twelve feet from the ground, and the top of the tree thereupon fell to the ground, but the trunk continued to rest on the stump. The tree had been broken by a steel cable, by which a log was being pulled in, several hours previous to the accident to the plaintiff, and the court said [118 Miss. 401, 79 So. 237]: "From the evidence the foreman had no occasion to anticipate that plaintiff would go under or in close proximity to the broken tree, or, even if he should do so, that the trunk of this tree would slip from its stump. Very probably the broken trunk of the bay tree rested very insecurely on the stump, but no one appreciated this fact until the plaintiff was injured. Just why the tree fell from the stump no one of the witnesses seems to know." Such is true in the case at bar. The court reversed a judgement for the plaintiff in that case and rendered a judgment for the lumber company and said, among other things, that, "If a large sawmill corporation had devolved upon it the duty of following its servants into the forest and securing each of them against injuries from falling trees, limbs, or other accidents in the woods, then in all logging operations the master would become absolute insurer of the safety of such employees. Their very work carries them from place to place as they fell, gather, and haul logs, and the hazard of an employee in any particular spot or place is necessarily temporary and transitory. Surely the master is not required to make safe the broad acres of woods and see

to it that employees of the lumber company are not hurt by defective, broken, or falling trees.''

The view of the court above quoted is not in conflict with the rule that the master must not order the servant into a place of known danger, or with the rule announced in Benton v. Finkbine Lumber Co., supra, to the effect that the master should promote reasonable rules and regulations for the safety of the men so as to prevent a sawer on one strip of timber from being injured by a falling tree that is then being cut by other employees on an adjoining strip; but the Benton case has no application to the facts actually testified to in the present case as hereinbefore shown, even though the declaration sufficiently charged a state of facts that would constitute negligence under that decision.

While unnecessary to the decision of the case, for the reasons heretofore stated as to the non-liability of plaintiff's employer, Moran, it may be further noted that under no theory could there be liability against the defendants, Orlie Garner, H. P. Barber, or the Green Lumber Company, since the undisputed testimony shows that the defendant, T. P. Moran, by whom the plaintiff was employed and who directed and controlled his services, was an independent contractor, using his own trucks, tools, and other equipment when sawing the logs and hauling them to the mill of Barber at so much per thousand feet. Neither Garner, another independent contractor, nor Barber, a local sawmill man to whose mill the logs were hauled, nor the Green Lumber Company which bought some of the lumber and logs, had any supervision or control whatsoever over the employment, wages, time, duties, or the means and methods used in the performance of the work of the plaintiff while he sawed logs as an employee of the defendant T. P. Moran. Hence the relation of master and servant as between either of them and the plaintiff did not exist. 56 C. J. S., Master and Servant, Section 2, page 33; Hutchinson-Moore Lumber Co. v. Pittman, 154 Miss. 1, 122 So. 191; Texas Co. v. Mills, 171

Miss. 231, 156 So. 866; Kisner v. Jackson, 159 Miss. 424, 132 So. 90; and Crosby Lumber & Mfg. Co. et al. v. Durham, 181 Miss. 559, 179 So. 285, 854; and numerous other decisions of this court therein cited.

However, as hereinbefore stated, the proof fails to establish any actionable negligence on the part of any of the defendants and the judgment appealed from must, therefore, be reversed.

Reversed and judgment here for the appellants.