**MARKET INSURANCE COMPANY,**
Plaintiff-Appellant,

Eva Nell Killion, widow of Jerome Killion, Deceased, and as Parent, Natural Guardian and Next Friend, et al., Intervening Plaintiff-Appellants,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 26410.

United States Court of Appeals
Fifth Circuit.

Sept. 8, 1969.

W. Swan Yerger, Jackson, Miss., Heidelberg, Woodliff & Franks, Jackson, Miss., of counsel, for appellants.

Robert E. Hauberg, U. S. Atty., W. E. Morse, Joseph E. Brown, Jr., Asst. U. S. Attys., Jackson, Miss., for appellee.

Before COLEMAN and GODBOLD, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge:

The prior opinion and judgment of this Court of June 10, 1969, are withdrawn, and the following opinion substituted therefor.

This action was brought against the United States of America for the wrongful death of Jerome Killion, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq., by plaintiffs-appellants, Market Insurance Company and Eva Nell Killion, widow of Jerome Killion, deceased, and as guardian and next friend of seven minor children.

Appellants challenge the findings of fact and conclusions of law by the District Court, claiming they are clearly erroneous and contrary to the law. The District Court found for the United States. We uphold the District Court's findings and affirm the judgment.

At the time of his death on July 18, 1964, Jerome Killion was an employee of Loftin & Woodard, Inc. (hereinafter referred to as Loftin), which company had a contract with the United States Corps of Engineers to remove brush, logs and stumps from the Tchula Lake area in order to accelerate the flow of water dur-

ing flood conditions. Market Insurance Company, as the workmen's compensation carrier for Loftin, paid compensation benefits for which it seeks reimbursement from the United States. Eva Nell Killion, on behalf of herself and children, sues to recover for the death of her husband. The United States filed a third-party action against Loftin, but Loftin is not a party to this appeal. Upon a trial without a jury, the District Court dismissed the suit of Market Insurance Company and Eva Nell Killion.

On July 18, 1964, Jerome Killion, acting under authority and permission from the foreman of Loftin, was operating one of its motor boats and was returning in the boat from work to base camp when the boat struck a submerged highway bridge turntable located in the center of Tchula Lake. This collision caused another of Loftin's employees, Matthew Dukes, Jr., to fall overboard. While attempting to rescue this employee, Jerome Killion had a heart attack and died from shock. Matthew Dukes, Jr. drowned.

The submerged turntable was approximately 10 to 12 inches under water on the day of the accident. The width of Tchula Lake at the point of the collision was approximately 200 to 250 feet and the submerged bridge turntable was approximately in the center of the lake, located a short distance north of the base camp.

In accordance with the contract, the Corps of Engineers furnished Loftin certain drawings and maps of Tchula Lake. Although one of these drawings showed certain obstructions, prior to the collision the submerged bridge turntable was not shown. Neither was the turntable itself marked in any way which might serve as a warning.

The findings of fact as actually made by the trial court cannot be set aside by this Court unless clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20, 24 (1954); Pennington v. Colonial Pipeline Co., 387 F.2d 903 (5th Cir. 1968);

Barron & Holtzoff, Federal Practice and Procedure § 1121 (Wright ed., 1961).

The District Court found that it was the sole duty of the contractor, Loftin, to warn its employees of any hidden hazards in Tchula Lake. Appellants contend that the United States Corps of Engineers was under a non-delegable duty either imposed by contract or by law, to ascertain the presence and location of any large or latent obstructions in Tchula Lake and to warn decedent or to see that a warning was given to him.

Under the provisions of 28 U.S.C. § 2674 the United States is liable under the Federal Tort Claims Act in the same manner as a private individual in like circumstances. Fair v. United States, 234 F.2d 288 (5th Cir. 1956); United States v. Campbell, 172 F.2d 500 (5th Cir. 1949), cert. denied 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757 (1949). This wrongful death action is governed by the tort law of Mississippi since the alleged negligent acts or omissions occurred there. 28 U.S.C. § 2674. An heir cannot recover under the Mississippi Wrongful Death Statute unless the deceased himself could have recovered had he not been killed. Mississippi Code 1942, § 1453. Under the Mississippi law of negligence a private party would not be liable to the deceased.

No Mississippi cases precisely in point have been brought to the attention of this Court. However, under Mississippi law the United States owed to Loftin as an invitee a duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the channel snagging operation, not to expose Loftin to unreasonable risk and to give Loftin adequate and timely notice and warning of latent perils which were known to it but not to Loftin. Nowell v. Harris, 219 Miss. 363, 68 So.2d 464 (1954); Strand Enterprises v. Turner, 223 Miss. 588, 78 So.2d 769, 47 A.L.R.2d 1431 (1955). The trial court properly concluded that in view of the nature of the work (removal of brush, logs and

stumps from the lake) and the conditions under which it was to be performed, the United States was not under a duty to Killion to foresee the actual catastrophe which occurred. Cf. Lancaster v. Lancaster, 213 Miss. 536, 57 So.2d 302 (1952); Green Lumber Co. v. Sullivan, 208 Miss. 651, 45 So.2d 243 (1950); Jefferson v. Callender, 198 Miss. 626, 22 So.2d 490 (1945). Moreover, the parties stipulated that the presence and location of the turntable was not known to any employee of the United States or the Corps of Engineers.

As a general rule, "the employer shall not be answerable for an injury resulting from the manner in which the details of the work are carried out by the independent contractor". 27 Am.Jur. Independent Contractor § 22, p. 505. But see Emelwon, Inc. v. United States, 391 F.2d 9 (5th Cir. 1968), where the Court applied Florida law regarding the liability of the United States under the Federal Tort Claims Act resulting from failure to prevent harm from an inherently dangerous activity carried on by an independent contractor. Here, the United States did not reserve the right to direct the manner of the performance of the contract details such as how Loftin's employees would return to base camp. The United States was entitled to presume that Loftin would exercise reasonable skill and prudence in performing the details of the stipulated work.

Appellants claim that the Corps of Engineers undertook the responsibility of communicating safety information to the employees of Loftin. They claim that this duty arose by the terms of Loftin's contract with the United States and in particular the safety requirements imposed upon Loftin in the contract, and by the Corps' conduct in placing an inspector on the job with the responsibility of overseeing Loftin's safety practices.

The contract under which the snagging operation was being conducted is typical of contracts used by the Corps of Engineers in the construction of flood control and related projects. Loftin was required to perform the work "in strict accordance with the specifications, schedules, and drawings * * *" to be furnished by the contracting officer from time to time. Under the contract all workmanship is subject to inspection and examination by the Corps, and the United States retains the right to reject defective workmanship or require its correction.

Paragraph GC-16 of the contract provides as follows:

"GC–16 *Accident Prevention.*

(a) In order to provide safety controls for protection to the life and health of employees and other persons; for prevention of damage to property, materials, supplies and equipment; and for avoidance of work interruptions in the performance of this contract; the Contractor will comply with all pertinent provisions of the manual 'Safety Requirements' approved by the Chief of Engineers, 16 December 1941, as revised 16 April 1951, and as may be further amended, and will also take or cause to be taken such additional measures as the Contracting Officer may determine to be reasonably necessary for the purpose.

"(b) Prior to commencement of work the contractor will:

"(1) Submit in writing his proposals for effectuating this provision for Accident Prevention.

"(2) Meet in conference with representative of the contracting officer to discuss and develop mutual understanding relative to administration of the over-all safety program.

"(c) During the performance of work under the contract, the contractor shall comply with all procedures prescribed by the contracting officer for the control and safety of persons visiting the job site and will comply with such requirements to prevent accidents as may be specified under the Special Conditions of these specifica-

tions or issued by the contracting officer.

\* \* \* \* \* \*

"(e) The contracting officer will notify the contractor of any non-compliance with the foregoing provisions and the action to be taken. The contractor shall, after receipt of such notice, immediately take corrective action. Such notice, when delivered to the contractor or his representative at the site of the work, shall be deemed sufficient for the purpose. If the contractor fails or refuses to comply promptly, the contracting officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. No part of the time lost due to any such stop order shall be made the subject of claim for extension of time or for excess costs or damages by the contractor.

"(f) Compliance with the provisions of this article by subcontractors will be the responsibility of the contractor".

Under the heading "Inspection" of paragraph GC-17 of the contract appears the following:

"The work will be conducted under the general direction of the contracting officer and is subject to inspection by his appointed inspectors to insure strict compliance with the terms of the contract. No inspector is authorized to change any provision of the specifications without the written authorization of the contracting officer, nor shall the presence or absence of an inspector relieve the contractor from any requirements of the contract. As soon as practicable after the completion of the entire work, or any divisible part thereof as may be designated in these specifications, a thorough examination thereof will be made by the contracting officer at the site of the work. If such work is found to comply fully with the requirements of the contract, it will be accepted; and final payment therefor will be made in accordance with the article of the contract entitled 'Payments to Contractors' ".

Under the general provisions of the contract (paragraph GC-16), the contractor had a duty to comply with the Corps of Engineers safety manual.[1] The safety manual required the contractor to place warning signs where necessary to provide proper and adequate warnings of hazards to workmen and to the public. The contractor was also obligated to take such additional measures as the contracting officer of the Corps might determine to be reasonably necessary for the purpose of providing safety controls for the protection of the life and health of the employees and other persons.

In cases where employees of independent contractors such as Loftin have sustained injuries while performing work for the United States, plaintiffs-employees have unsuccessfully argued that the United States, by the safety provisions of a government contract, has assumed a contractual obligation to the injured employee. See Beason v. United States, 396 F.2d 2 (5th Cir. 1968) (per curiam); Kirk v. United States, 161 F. Supp. 722 (S.D.Idaho 1958), aff'd 270 F.2d 110 (9th Cir. 1959).

▮ Issuance of regulations and a manual relating to a safety program does not render the government liable for the death of an employee of an independent contractor under the Federal Tort Claims Act. Cf. *Kirk, supra.* If

In *Kirk* plaintiffs contended that the defendant United States was charged by law with the positive duty of accident prevention at the Lucky Peak Project. Lucky Peak Dam was being constructed in accordance with plans and specifications prepared by the Army Corps of Engineers under a contract between the United States and general contractors. Kirk was a carpenter employed by the contractors and was not an employee of

---

1. The contract required compliance with the Corps' safety manual EM 385–1–1, dated 12 March 1958, entitled "General Safety Requirements", as amended.

the United States. When a scaffold broke he fell into the river and was drowned after being swept into a tunnel under the dam. Plaintiffs argued that failure to effectuate a program of accident prevention and more particularly to effectuate the provisions of the "Safety Regulations" manual was negligence. The United States Court of Appeals for the Ninth Circuit concluded that the duty on the part of the Corps of Army Engineers to initiate and carry out a safety program did not create a legal duty to the deceased.

The Corps of Engineers maintained a construction and safety inspector on the job to make certain that the contractor was complying with all plans and specifications, including the safety procedures that were to be carried out to protect the workers. There was no evidence, however, that this inspector was under any contractual duty to furnish the contractor with complete information about the working conditions in and around the Tchula Lake area. Although the safety inspector for the Corps of Engineers was relying on the Corps' drawings to advise him whether or not there were any underwater obstructions in the area, he testified that he made no personal investigation or inspection for underwater hazards and did not see or know of the submerged turntable prior to the date of the accident.[2]

■ The fact that the Corps of Engineers retained the right under the contract to inspect the work and to see that the provisions of the contract were carried out is not by itself sufficient to render the United States liable for the death of Killion. Alexander v. Frost Lumber Indus., 88 F.Supp. 516, 518 (W. D.La.1950), aff'd 187 F.2d 27 (5th Cir. 1951). Under the circumstances of this case, the Corps of Engineers' safety inspection activities did not amount to the undertaking of a duty to plaintiffs' deceased.

The trial court properly concluded that drawing #5 was a work plan. As the court specifically found, "[the drawing] made no attempt to locate underwater tree stumps or other submerged objects and was not furnished for that purpose". Nowhere did the contract remotely indicate that the government had swept the channel to ascertain underwater hazards.

Paragraph SC-4 of the contract stated that information shown on the contract drawings was furnished for information only. Certainly the admonition "WORK SAFELY" on drawing #5 did not conclusively establish that the drawing was furnished to pinpoint safety hazards. The very nature of the work to be performed by the contractor precludes any reasonable belief that all submerged obstructions had been removed or identified on drawing #5.

■ There was abundant evidence to sustain the District Court's findings and conclusions that the government fulfilled its duty to the contractor's employees by insisting on a site inspection by the contractor and by undertaking such safety precautions as were commensurate with the known hazards of operating a motor boat.

By paragraph GC-3 of the contract Loftin agreed to make a site inspection in order to ascertain the physical conditions in the area. The contract expressly provided that the government assumed no responsibility for conclusions or interpretations made by the contractor on the basis of the information made available by the government. In addition, the contract stated that "representations which are not expressly stated in the contract and for which liability is not expressly assumed by the government in the contract shall be deemed only for the information of the contractor".

The District Court found that "[the government engineers] did not know the skiff was used to haul other employees at the completion of a work day, from the work area upstream down to the campsite, which meant along a moving stream some 200 to 250 feet wide, and at

2. Deposition of John F. Macanto, p. 6.

a point along the banks where the snagging had been completed. The turntable was north of the campsite, between it and the work area, and approximately in the middle of the stream."

Appellants claim that it is apparent from the testimony of the safety inspector on the job and the engineer in charge of the Tchula Lake Project for the Corps of Engineers that such a finding by the District Court was clearly erroneous. We do not find it necessary to consider that testimony inasmuch as the liability of the United States is the same as if the skiff struck a submerged object anywhere in the course of its travel. A finding on that issue is immaterial to the ultimate conclusion of liability in this case and any error with regard thereto is harmless. 28 U.S.C. § 2111, Rule 61, Fed.Rules Civ.Proc.; Atlantic Coast Line R. Co. v. Burkett, 192 F.2d 941, 944 (5th Cir. 1951).

The District Judge's findings are amply supported by competent substantial evidence. The trial court found under the evidence and the applicable law that the plaintiffs were not entitled to recover and we find no error in his decision.

Affirmed.